RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067
Telephone: (310) 229-1234
Fax: (310) 229-1244
Email: rb@lnbyb.com, tma@lnbyb.com, lls@lnbyb.com
Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re: | Case No.: 1:20-bk-10256-DS |
| NAI CAPITAL, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession | **DISCLOSURE STATEMENT DESCRIBING DEBTOR'S PLAN OF REORGANIZATION (DATED JUNE 2, 2020)** |

Disclosure Statement Hearing:
DATE:       July 14, 2020
TIME:       11:00 a.m.
PLACE:      Courtroom "1639"
            255 East Temple Street
            Los Angeles, CA 90012

Plan Confirmation Hearing:
DATE:       [TBD]
TIME:       [TBD]
PLACE:      Courtroom "1639"
            255 East Temple Street
            Los Angeles, CA 90012

///

///

///

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................................2

    A.    Purpose of this Disclosure Statement ....................................................................2

    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............3

    C.    Identity of Persons to Contact for More Information Regarding the Plan ..............4

    D.    Disclaimer...............................................................................................................4

II. BACKGROUND .................................................................................................................4

    A.    Description and History of the Debtor's Business and a Summary of the
        Circumstances that Led to the Filing of the Debtor's Chapter 11 Case..................4

    B.    Significant Events Which Have Occurred During The Debtor's Chapter
        11 Bankruptcy Case................................................................................................6

    C.    Historical and Current Financials for the Debtor ..................................................13

III. PLAN SUMMARY ..........................................................................................................14

IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE
    PLAN...............................................................................................................................15

    A.    What Creditors and Interest Holders Will Receive Under the Plan .....................15

    B.    Unclassified Claims...............................................................................................15

    C.    Classified Claims and Interests ............................................................................18

V. MEANS OF EFFECTUATING AND IMPLEMENTATION OF THE PLAN.......................23

    A.    The Liquidating Trust............................................................................................23

    B.    Settlement Agreements..........................................................................................39

    C.    Claims Administration and Prosecution and Plan Distributions. ..........................39

    D.    Books and Records of the Debtor..........................................................................39

    E.    Corporate Action ..................................................................................................40

    F.    Effectuating Documents and Further Transactions ..............................................40

    G.    Transfers of Property under the Plan.....................................................................41

H.    Dissolution of the Debtor ........................................................................41

I.    Procedures for Disputed, Contingent, or Unliquidated Claims ............................41

J.    Distributions to be Made Pursuant to the Plan ......................................................43

K.    Exculpations and Releases .............................................................................43

L.    Injunctions ...............................................................................................43

M.    Executory Contracts and Unexpired Leases ........................................................44

N.    Changes in Rates Subject to Regulatory Commission Approval .........................45

O.    Retention of Jurisdiction...............................................................................46

VI. TAX CONSEQUENCES OF THE PLAN ...............................................................47

A.    Withholding Applicable to all Holders of Claims...................................................49

B.    Tax Consequences to Holders of Allowed General Unsecured Claims ...............49

C.    Tax Consequences for the Debtor ..................................................................51

VII. CONFIRMATION REQUIREMENTS AND PROCEDURES .............................51

A.    Who May Vote or Object ................................................................................52

B.    Who May Vote to Accept/Reject the Plan ..............................................................52

C.    What Is an Allowed Claim ............................................................................52

D.    What Is an Impaired Claim...........................................................................53

E.    Who Is Not Entitled to Vote.........................................................................53

F.    Who Can Vote in More Than One Class.................................................................54

G.    Votes Necessary to Confirm the Plan....................................................................54

H.    Votes Necessary for a Class to Accept the Plan....................................................54

I.    Treatment of Non-Accepting Classes....................................................................54

J.    Request for Confirmation Despite Nonacceptance by Impaired Class(es). ..........54

K.    Liquidation Analysis. ...................................................................................54

L.    Feasibility. ..................................................................................................56

VIII. RISK FACTORS REGARDING THE PLAN ..............................................................57

ii

IX.     EFFECT OF CONFIRMATION OF THE PLAN.................................................................57

        A.      Discharge................................................................................................................57

        B.      Modification of the Plan......................................................................................57

        C.      Post-Confirmation Status Reports.......................................................................57

        D.      Post-Confirmation Conversion/Dismissal............................................................58

        E.      Final Decree..........................................................................................................58

## I.    INTRODUCTION

NAI Capital, Inc., the Debtor and Debtor in Possession in the above-referenced Chapter 11 bankruptcy case (the "Debtor"), is the Debtor in a pending Chapter 11 bankruptcy case.  On January 31, 2020 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code").  This document is the Disclosure Statement ("Disclosure Statement") which describes the Debtor's Plan of Reorganization (Dated June 2, 2020) ("Plan") that is being proposed by the Debtor.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.  The Plan is a plan of reorganization that has been proposed by the Debtor.  The effective date of the Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Bankruptcy Court order confirming the Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the effectiveness of the Plan have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan have been executed and delivered by all parties to such documents, instruments and agreements.

A.    **Purpose of this Disclosure Statement**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT**,

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what you will receive on account of your claim if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE ON ACCOUNT OF YOUR CLAIM IN**

2

LIQUIDATION,

    **(3)**    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING ITS BANKRUPTCY CASE,**

    **(4)**    **WHAT THINGS THE BANKRUPTCY COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

    **(5)**    **WHAT IS THE EFFECT OF CONFIRMATION, AND**

    **(6)**    **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.**    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

    **1.**    **Time and Place of the Plan Confirmation Hearing**

The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan (the "Plan Confirmation Hearing") will take place on _____, 2020, at ___:___ .m., before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge for the Central District of California, in Courtroom 1639, located at 255 East Temple Street, Los Angeles, California 90012.

### 2. Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Todd M. Arnold, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067.

Your ballot must be received by _____, 2020 or it will not be counted.

**IF YOU DO NOT TIMELY VOTE FOR OR AGAINST THE PLAN, THE DEBTOR WILL REQUEST THE BANKRUPTCY COURT TO TREAT YOU AS HAVING VOTED TO ACCEPT THE PLAN.**

### 3. Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must, by _____, 2020, be filed with the Bankruptcy Court and served by same day service upon Todd M. Arnold, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, fax: (310) 229-1244, email: TMA@LNBYB.COM.

**C.    Identity of Persons to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Todd M. Arnold, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, fax: (310) 229-1244, email: TMA@LNBYB.COM.

**D.    Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records which, unless otherwise indicated, are unaudited.  The information contained in this Disclosure Statement is provided by the Debtor.  The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    BACKGROUND

**A.    Description and History of the Debtor's Business and a Summary of the Circumstances that Led to the Filing of the Debtor's Chapter 11 Case**

The Debtor is a privately held, full service commercial real estate brokerage firm headquartered in Encino, California.  The Debtor is one of the largest members of NAI Global, and

is the largest independently owned full service commercial real estate brokerage firm headquartered in Southern California.  The Debtor was founded in 1979 and has therefore been in business for approximately 40 years and is extremely well known and well regarded.

The Debtor has 13 brokerage offices in Southern California and one property management office.  The Debtor works with approximately 230 brokers (the "Brokers") who are independent contractors pursuant to the California Department of Real Estate, and the Debtor employs approximately 42 employees.  Approximately 56% of the Debtor's historical annual revenue of approximately $36 million is generated from the sale of industrial and retail properties, with the approximately 44% balance generated from leasing of retail, office, medical and industrial properties.  The Debtor's primary expenses consist of the Debtor's commission disbursements, payroll, rent and all other general and administrative expenses.

The Debtor's most valuable asset is its independent contractor agreements with the Brokers working with the Debtor and without whom the Debtor would not be able to generate income. While the Debtor has certain limited additional assets, the real value of the Debtor's business is its ability to generate future commissions from future real estate transactions for which the Debtor requires the continued services of its Brokers.  The Debtor's principal liabilities are a $1.888 million judgment entered in favor of a former principal of the Debtor and corresponding claims by the Debtor's founder and his wife for unpaid wages and interest that occurred years ago, which comprise total general unsecured claims in the amount of approximately $5.664 million.  In addition, the Debtor has approximately $1.628 million of scheduled outstanding pre-petition accounts payable, inclusive of outstanding professional fees, as of the Petition Date (some of which are disputed).[1] The Debtor has no secured debt.  The Debtor filed its chapter 11 bankruptcy case to enable the Debtor to continue operating its longstanding business while obtaining the breathing spell from efforts to collect on pre-Petition Date claims, which the Debtor lacked the ability to pay as they came due, and the exorbitant cost associated with continuing with all of the Debtor's pending litigation matters.

---

[1] As the claims bar date has only recently been set, there may be additional claims beyond those scheduled by the Debtor.

**B.      Significant Events Which Have Occurred During The Debtor's Chapter 11
Bankruptcy Case**

    **1.      Business Operations, Financial Performance and Bankruptcy Exit
Game Plan**

Shortly prior to its Chapter 11 filing, the Debtor's two founders and senior management (Michael Zugsmith and Rachel Howitt) relinquished all operational control of the Debtor's business operations and ceased working for the Debtor.  The Debtor's Board of Directors appointed Chris Jackson, an Executive Managing Director of the Debtor, as the Designated Officer for the Debtor during the pendency of the Debtor's Chapter 11 case to guide the Debtor through its Chapter 11 case towards a successful conclusion.  Mr. Jackson has graciously fulfilled this additional role as the Designated Officer of the Debtor without receiving any compensation for doing so.

By the outset of its bankruptcy case, the Debtor had done a great job of stabilizing its business operations and retaining all of its Brokers.  In fact, by the time of the onset of the COVID-19 pandemic and the related stay at home order, the Debtor had already successfully stabilized its business operations and was performing very well – business was booming.  There is no doubt that if not for the onset of the COVID-19 pandemic and the related stay at home order, the Debtor would have been able to successfully reorganize without any financial assistance from any outside parties. But the COVID-19 pandemic and the related stay at home order has had a devastating impact on the Debtor's business and cash flow just as it has had on all of the Debtor's competitors in the real estate industry.  Compounding the situation is that while all of the Debtor's competitors were able to obtain significant financial relief for payroll and rent by obtaining a PPP loan under the CARES Act, the SBA (which is the governmental agency charged with administering the PPP loan program) decided on its own (as it was not contained in the CARES Act itself) not to make PPP loans available to any company in Chapter 11.  This deprived the Debtor of well in excess of $1 million of badly needed relief and essentially eliminated any ability of the Debtor to reorganize without outside funding.  The Debtor sought to obtain an emergency temporary restraining order from the Bankruptcy Court in an effort to force the SBA to provide the Debtor with a PPP loan for just the Debtor's payroll (not rent or any other expenses).  The SBA vigorously opposed the Debtor's

request, and the Bankruptcy Court denied the Debtor's request because the Bankruptcy Court concluded that it did not have the legal ability to override the SBA's internal guidelines. The Debtor believes that there is no legitimate basis for the SBA to exclude Chapter 11 debtors from the ability to obtain a PPP loan, and the SBA acknowledges that it is being discriminatory against Chapter 11 debtors. The Debtor believes that this acknowledged discriminatory policy of the SBA violates applicable law and makes no sense from any policy perspective because the whole idea of the PPP loan is to enable businesses to pay their payroll during this pandemic and then to have their PPP loan forgiven. That is why the Debtor sought to compel the SBA to make a PPP loan to the Debtor *solely to be used to pay the Debtor's payroll*. However, this policy decision of the SBA has had a dramatic impact upon the Debtor's post-petition finances and ability to reorganize without outside funding.

While the Debtor has approximately $175,000 of cash in the bank (excluding outstanding post-petition payment obligations to its Brokers) at the time of the filing of this Disclosure Statement (June 2, 2020), the Debtor is behind in the payment of some of its May and June, 2020 rent to its landlords (the Debtor was current with all prior 2020 rent obligations), and it is absolutely imperative that the Debtor not run out of money because the Debtor does not have any borrowing facility in place. It therefore became an economic and urgent necessity for the Debtor to find a financial partner who is (1) interested in acquiring the Debtor's business operations; (2) willing to pay a meaningful amount of cash to the Debtor's estate and leave behind for the benefit of the Debtor's estate and its creditors the economic benefit of all pending sale and lease transactions and all of the Debtor's remaining cash; (3) willing to hire many of the Debtor's employees and all or virtually all of the Brokers; and (4) someone that the Brokers are willing to enter into contracts with because, most importantly, nobody is going to be willing to acquire the Debtor's business operations and pay money for it if the Brokers are not willing to become associated with that entity as nothing stops the Brokers from going to work with anyone else. If the Debtor suffered a significant flight of its Brokers, particularly the top producing ones, the Debtor would be forced to shut down immediately and lose all of its value.

Fortunately, after extensive discussions led by Mr. Jackson, the Debtor has identified what the

Debtor believes is a perfect fit for a financial merger partner in _____

(the "Merger Partner").  The Merger Partner is a direct and local competitor of the Debtor, and the

Debtor has concluded that effectively merging the two companies, particularly during this time of

pandemic, will be a win-win situation for all concerned.  The Merger Partner is willing and able to

satisfy all four of the criteria outlined above.  The Merger Partner has agreed to do all of the

following:  (1) pay to the Debtor's bankruptcy estate at the closing of this transaction (i.e., on the

Effective Date of the Plan) the cash sum of $750,000 (the "Initial Cash Component")[2]; (2)  leave

behind for the benefit of the Debtor's estate and its creditors all of the Debtor's remaining cash and

all of the net economic benefit of all of the Debtor's pending sale and lease transactions (i.e., after

the Debtor's Brokers have been paid their commissions resulting from the closing of such sale and

lease transactions – "Pending Transactions"), with the understanding that the Debtor and/or the

Liquidating Trust will manage and coordinate all Pending Transactions following the Effective Date

through each of their respective closings, including the payment of the related commissions owing

to the Debtor's Brokers; and all of the net economic benefit of any renewal commissions earned

from leases that were finalized prior to the Effective Date where such renewal commissions are

included in the pre-Effective Date lease agreements but become due and owing at any time after the

Effective Date, with the understanding that the Debtor and/or the Liquidating Trust will manage and

coordinate all such future renewal commissions, including the payment of the related commissions

owing to the Debtor's Brokers[3]; (3) issue a promissory note for the benefit of the Debtor's estate

---

[2] In order to avoid any risk of non-compliance, the Merger Partner has agreed to deposit the $750,000 Initial Cash Component into an escrow account maintained by the Debtor's bankruptcy counsel at least 21 days prior to the date of the Plan Confirmation Hearing.

[3] In connection with Plan confirmation, the Debtor will provide the Creditors' Committee with a schedule of all Pending Transactions and expected revenue to be received by the Debtor from all such Pending Transactions.  If required, the Debtor will also submit such schedule of Pending Transactions to the UST and to the Bankruptcy Court in Chambers under seal.  The Debtor will not file the schedule of Pending Transactions with the Bankruptcy Court for privacy reasons and not to negatively impact upon any such Pending Transactions.  Recognizing that the Debtor's schedule of Pending Transactions changes on a continuous basis as transactions close and new ones are generated, solely as a point of reference, as of the time of the filing of this Disclosure Statement, the Debtor estimates that its current Pending Transactions are estimated to create approximately $5,734,104 of total revenue for the Debtor, of which an estimated $4,300,578

and its creditors (the "Merger Partner Promissory Note") which will obligate the Merger Partner to pay 3% of net commissions received by the Merger Partner (i.e., after the Brokers have been paid their share) from sale and lease transactions consummated by the Debtor's Brokers who become associated with the Merger Partner for each of the first three years following the closing of this transaction, with the Merger Partner to make such payments on a quarterly basis and provide the Trustee of the Liquidating Trust (defined below) with supportive accounting[4]; and (4) hire many of the Debtor's employees and all or virtually all of the Brokers (who will enter into new independent contractor agreements with the Merger Partner).  In addition to obtaining the value of the Debtor's going concern business as described above, the Merger Partner will be acquiring from the Debtor those assets of the Debtor identified on Exhibit "1" to this Disclosure Statement (the "Acquired Assets").  The Merger Partner will be acquiring the Acquired Assets and taking an assignment of the Assumed Contracts and Leases (defined below) free and clear of all claims and interests of the Debtor, and the Merger Partner will not be assuming or become liable for any claims of the Debtor. The Plan Confirmation Order will contain language to this effect that will be similar to the language that would typically be included in a free and clear sale order pursuant to Section 363(f) of the Bankruptcy Code.

The Debtor and the Merger Partner have entered into the Merger Agreement Term Sheet attached as Exhibit "9" to this Disclosure Statement.  The Merger Agreement Term Sheet is non-binding but is intended to set forth the terms of the transaction between the Debtor and the Merger Partner.  Prior to the Plan Confirmation Hearing, the Debtor will file with the Court the final binding versions of the merger documents signed by the Debtor and the Merger Partner, and such

---

would be paid to the Debtor's Brokers with the estimated remaining balance of $1,433,526 remaining property of the Debtor's estate.

[4] By way of example only, if the Debtor's Brokers generate $30 million of annual gross revenue for the Merger Partner from sale and lease transactions consummated while they are associated with the Merger Partner, and the Brokers themselves are paid an average of 60% of this amount, that would result in a total of $12 million of net commissions received by the Merger Partner.  In this example, that would require the Merger Partner to make an annual payment to the Liquidating Trust in the amount of $360,000 on account of the Merger Partner Promissory Note, calculated as 3% of $12 million.  A form of the Merger Partner Promissory Note is attached as Exhibit "4" to this Disclosure Statement.

final merger documents will either be attached as exhibits to the Plan Confirmation Order or referenced in and incorporated into the Plan Confirmation Order.

### 2.    Emergency Motion To Honor Payroll Obligations

Immediately after the bankruptcy filing, the Debtor filed an emergency motion for authority to: (1) honor any outstanding paychecks for wages that were issued to employees prior to the Petition Date but were not yet cashed or deposited as of the Petition Date or that were returned for insufficient funds, and to issue any replacement checks to the extent necessary to pay such wages to employees; (2) pay outstanding payroll tax obligations for the payroll period immediately preceding the bankruptcy filing; and (3) honor certain other related employee obligations (such as reimbursement of approved expenses).  On February 5, 2020, the Bankruptcy Court entered an order [Docket No. 17] granting that motion and authorizing the Debtor to honor its payroll related obligations.

### 3.    Emergency Motion To Ensure Utility Services Are Not Interrupted

Immediately after the bankruptcy filing, the Debtor filed an emergency motion for authority to provide utility service providers with refundable cash deposits for the purpose of ensuring that utility providers did not shut off services due to outstanding utility invoices.  On February 5, 2020, the Bankruptcy Court entered an order [Docket No. 18] granting that motion, which has ensured that Debtor's utility services remained uninterrupted.

### 4.    Emergency Motion To Preserve Cash Management System

Immediately after the bankruptcy filing, the Debtor filed an emergency motion for authority to maintain certain aspects of the Debtor's cash management system.  On February 5, 2020, the Bankruptcy Court entered an order [Docket No. 19] granting that motion, which enabled the Debtor to minimize any negative impact upon its business operations resulting from the Debtor's bankruptcy filing.

### 5.    Formation of the Official Committee of Unsecured Creditors

On March 12, 2020 [Docket No. 68], the United States Trustee formed the Official Committee of Unsecured Creditors (the "Creditors' Committee") in this case comprised of the following five entities and people: (1) Venox Realty, Inc.; (2) The Sheridan Group; (3) Linzer

Law Group, P.C.; (4) Brian Childs; and (5) Cimarron Sign Services, Inc.

### 6.     Case Status Conferences

On March 9, 2020 [Docket No. 64], the Debtor filed its initial status conference report in this case, and the Bankruptcy Court conducted its initial case status conference on March 23, 2020.  On May 14, 2020 [Docket No. 112], the Debtor filed its second status conference report in this case, and the Bankruptcy Court conducted its second case status conference on May 28, 2020.

### 7.     Extension of Time for the Debtor to Assume or Reject its Real Property Leases

On April 15, 2020 [Docket No. 91], the Debtor filed a motion requesting the Bankruptcy Court to extend the deadline for the Debtor to assume or reject its real property leases to the maximum allowed under the Bankruptcy Code, which is to 210 days after the Petition Date.  A hearing was scheduled to be held on May 7, 2020.  The Bankruptcy Court waived appearances and granted the Debtor's motion, and, in so doing, the Bankruptcy Court extended the deadline for the Debtor to assume or reject its real property leases to August 28, 2020.

### 8.     Extension of the Debtor's Exclusivity Periods For Filing A Plan of Reorganization And Obtaining Acceptances Thereof

On April 15, 2020 [Docket No. 90], the Debtor filed a motion requesting the Bankruptcy Court to extend the Debtor's exclusive period to file a plan of reorganization and obtain acceptances thereof.  A hearing was scheduled to be held on May 7, 2020.  The Bankruptcy Court waived appearances and granted the Debtor's motion, and, in so doing, the Bankruptcy Court extended the Debtor's exclusive period to file a plan of reorganization to September 28, 2020, and the Bankruptcy Court extended the Debtor's exclusive period to solicit acceptances of its plan of reorganization to November 30, 2020.

### 9.     Employment of Professionals and Consultants

The Debtor has employed the following professionals:  Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") as Chapter 11 bankruptcy counsel; McGarrigle, Kenney & Zampiello, APC ("MKZ") as special litigation and special corporate counsel; and Miller Law Partners, PC ("MLP") as special employment and labor counsel.  The Debtor is also in the process of employing LKP Global Law, LLP ("LKP") as special corporate and securities counsel for the

purpose of assisting the Debtor to implement the terms of the Plan.  None of the Debtor's professionals has been paid any money for any post-petition fees and expenses that they have incurred.  The Creditors' Committee has hired ShemanoLaw (David B. Shemano - "Shemano") as its counsel.

### 10.    The Injunctive Relief Lawsuit Against the SBA

As indicated above, the Debtor filed a lawsuit against the SBA in an effort to try to compel the SBA to make the Debtor a PPP loan for just the Debtor's payroll when all of the Debtor's competitors who are not in Chapter 11 have been able to get a PPP loan for all of its intended purposes, including payroll, rent, utilities, etc.  In connection with that lawsuit, the Debtor sought a temporary restraining order against the SBA.  The Bankruptcy Court held a hearing on the Debtor's request for a temporary restraining order on May 19, 2020, and the Bankruptcy Court issued its oral ruling at a continued hearing on May 20, 2020.  Despite the obvious discriminatory treatment of Chapter 11 debtors (which the SBA acknowledges), the Bankruptcy Court unfortunately denied the Debtor's request for a temporary restraining order because the Bankruptcy Court concluded that it did not have the legal authority to force the SBA to make a PPP loan to the Debtor if the SBA made a policy decision that it is not going to make any PPP loan to any Chapter 11 Debtor.  As a result of the Bankruptcy Court's ruling, the Debtor dismissed its lawsuit against the SBA.

### 11.    Administration Of The Debtor's Chapter 11 Bankruptcy Case

As a Chapter 11 debtor in possession, the Debtor is subject to numerous reporting requirements, including a requirement to prepare and submit to the UST a detailed and extensive administrative compliance package comprised of various financial information, real property questionnaires, employee benefits questionnaires, proof of insurance, tax returns, and bank account information, among other things.  The Debtor is in compliance with this requirement, having submitted to the UST all of the required documentation in satisfaction of this requirement. The Debtor is also required to file with the Bankruptcy Court a detailed Schedule of Assets and Liabilities ("Bankruptcy Schedules") and a Statement of Financial Affairs.  The Debtor is in compliance with all of these filings.  The Debtor has also filed its required Monthly Operating

Reports.  The Debtor also participated in its required initial debtor interview with the UST, and the Debtor attend its Section 341(a) meeting of creditors conducted by the UST on March 6, 2020.

### 12.    Claims Bar Date

At a status conference held on May 28, 2020, the Bankruptcy Court established a deadline for creditors to file proofs of claim against the Debtor.  The deadline for creditors to file proofs of claim in the Debtor's case is July 31, 2020.  The deadline for governmental agencies to file proofs of claim in the Debtor's case is July 29, 2020.

### 13.    Status Of Litigation Involving The Debtor

Attached as Exhibit "8" to this Disclosure Statement is a detailed analysis of each litigation matter involving the Debtor.

## C.    Historical and Current Financials for the Debtor

The Debtor had total revenue in 2018 (before commission disbursements to its Brokers) of approximately $36,186,462.  In 2018, the Debtor incurred a loss of approximately $21,118.

The Debtor had total revenue in 2019 (before commission disbursements to its Brokers) of approximately $35,605,973.  In 2019, the Debtor incurred a loss of approximately $80,061.

Pursuant to the Debtor's filed Monthly Operating Reports, the Debtor has had the following post-petition financial performance on a cash basis:

February, 2020:

Revenue $4,285,773

Expenses $3,228,272

March, 2020:

Revenue $2,207,148

Expenses $2,361,506

April, 2020:

Revenue $2,064,305

Expenses $2,332,221

### III.    PLAN SUMMARY

The Plan provides for a sale of certain of its assets to the Merger Partner defined above as the "Acquired Assets" and the creation of a liquidating trust (the "Liquidating Trust") for the benefit of creditors as described below.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.7701-4(d), and is intended to be treated as a grantor trust for federal income tax purposes.  The Liquidating Trust will be organized for the purpose of collecting, distributing, liquidating and otherwise disposing of all of the funds, property, claims, rights and causes of action of the Debtor and its estate which are assigned to the Liquidating Trust pursuant to, and in accordance with, the Plan (collectively, the "Trust Property").  The Trust Property shall be comprised of all assets of the Debtor and its estate that are not sold to the Merger Partner (i.e., all assets of the Debtor and its estate other than the Acquired Assets), which shall include the Estate Funds (defined below) and the Estate Recoveries (defined below).  The Trust Property will include all litigation claims that belong to the Debtor's bankruptcy estate, including all avoidance causes of action, and all of the Debtor's books and records, which books and records shall, as indicated below, be maintained by the Liquidating Trustee (defined below) for at least the first two years following the Effective Date.  After the Liquidating Trust has been created and has taken ownership/assignment of all Trust Property, the Liquidating Trustee shall cause the Debtor to dissolve or otherwise wind down pursuant to applicable law.  Following the Effective Date, the Debtor shall not conduct any further business and/or other activities except as authorized by the Plan.

Class 1 under the Plan consists of all priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7).  The Debtor estimates that there are a total amount of approximately $77,717.51 of class 1 priority claims.

Class 2 under the Plan consists of all non-insiders that hold allowed general unsecured claims.  The Debtor estimates that there are a total of approximately $1,481,476.15 of class 2

allowed claims, recognizing that this amount may increase with the passage of the claims bar date and that this estimated figure does not include any litigation claims or claims based upon the Debtors' subsequent rejection, if any, of real property lease agreements or executory contracts that are not assigned to the Merger Partner.

Class 3 under the Plan consists of the general unsecured claim of insider Robert Scullin.

Class 4 under the Plan consists of the general unsecured claims of insiders Michael Zugsmith and Rachel Howitt.

Class 5 under the Plan consists of all equity interests in the Debtor.

The Plan will be funded by the following: (1) all of the Debtor's cash remaining on the Effective Date + (2) the $750,000 Initial Cash Component to be paid by the Merger Partner to the Debtor's bankruptcy estate on the Effective Date + (3) all revenue received from all of the Debtor's Pending Transactions existing on the Effective Date after all related commissions owing to the Brokers are paid + (4) all revenue received from the Merger Partner Promissory Note (collectively, the "Estate Funds").  In addition to the Estate Funds, creditors will receive the net benefit, if any, from the Trust's pursuit of any causes of action that currently belong to the Debtor's bankruptcy estate and will be transferred and assigned to the Trust on the Effective Date ("Estate Recoveries").

## IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.    What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class:

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan:

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date |
| LNBYB, bankruptcy counsel to the Debtor | $_____ (est.) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| MKZ, special litigation and special corporate counsel to the Debtor | $_____ (est.) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| MLP, special employment and labor counsel to the Debtor | $_____ (est.) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| LKP, special corporate and securities counsel to the Debtor | $_____ (est.) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |

| | | |
|---|---|---|
| Shemano, counsel to the Creditors' Committee | $_____ (est.) | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Post-Petition Non-Professional Fee Administrative Claims | $_____ (approx.) of post-petition accounts payable accrued in the ordinary course of the Debtor's business, including all outstanding post-petition rent obligations to the Debtor's landlords. | Paid in full out of the Estate Funds on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| **TOTAL** | $_____ | Paid in the manner described above |

Bankruptcy Court Approval of Fees Required:

The Bankruptcy Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Bankruptcy Court and fees owing to the UST, the professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimate as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be higher will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the extent the Debtor is required to engage in any such substantial litigation, the Debtor's professionals are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance

of any of these administrative claims.  Similarly, professionals who have been employed in this case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of this Disclosure Statement.

### 2.  Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims over a period ending not later than five years after the Petition Date.  All allowed Section 507(a)(8) priority tax claims will be paid in full, in cash, from the Estate Funds within ten (10) business days after the later of the Effective Date and the date such claims are deemed allowed by the Bankruptcy Court.  The Debtor did not include any priority tax claims in its Bankruptcy Schedules.  Thus far, the only filed claim asserting a priority tax is a proof of claim filed by the IRS asserting a priority tax claim in the amount of $5,733.09.

## C.    Classified Claims and Interests

### 1.    Class of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The Debtor does not believe that there are any secured claims in this case.

### 2.    Class of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments.  All such priority claims, which total $77,717.51, are being classified as class 1 claims under the Plan.  Attached as Exhibit "7" to this Disclosure Statement is a schedule of all known class 1 priority claims.  Class 1 priority

claims are impaired and entitled to vote to accept or reject the Plan, and they will be paid by the

Liquidating Trustee in full, without interest, in four equal quarterly payments at the end of each of

the first four calendar quarters following the Effective Date, with the source of money to be used

by the Liquidating Trustee to make such payments to be the Merger Partner Promissory Note.

While the Debtor is highly confident that the payments to be made by the Merger on account of

the Merger Partner Promissory Note will be well in excess of the quarterly payments to be made

to the holders of the class 1 priority claims, if for whatever they are not sufficient, the Liquidating

Trustee will use other Trust Property to make up for any shortfall.

### 3.    Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy

Code Section 507(a).  The following charts identify the Plan's treatment of the classes containing

the Debtor's non-priority general unsecured claims and the Debtor's non-priority subordinated or

equity equivalent general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 2 | All non-priority general unsecured claims that are not class 3 or class 4 non-priority general unsecured claims.<br><br>Based upon the amount of class 2 claims scheduled by the Debtor in Schedule F of its Bankruptcy Schedules and the class 2 claims that have thus far been asserted in filed proofs of claim, the Debtor currently estimates that there are a total of approximately | Impaired; allowed claims in this class are entitled to vote on the Plan. | Each holder of a class 2 allowed claim will, along with any class 3 allowed claim and class 4 allowed claims, receive a pro rata share of the Estate Funds and any other Estate Recoveries obtained by the Liquidating Trust, along with any other Trust Property, after the payment of all allowed administrative claims (including the fees and costs of the Liquidating Trust) and all allowed priority claims.  After holding back a reserve of $50,000 to pay for the costs of the Liquidating Trust, the Liquidating Trustee will make an initial distribution to holders of class 2, 3 and 4 allowed claims within ninety days following the Effective Date, and then will make distributions no less frequently then every |

| | | | |
|---|---|---|---|
| | $1,481,476.15 of class 2 claims. However, since the claims bar date was only recently set, this figure could increase.<br><br>A detailed claims chart showing all currently known class 2 claims that were either scheduled by the Debtor in its Bankruptcy Schedules or asserted in filed proofs of claim is attached hereto as Exhibit "2" (the "Claims Chart"). | | approximately ninety days thereafter provided there are sufficient funds (i.e., in excess of $10,000) available for distribution. Each time the Liquidating Trustee makes such a distribution, the Liquidating Trustee shall maintain a sufficient reserve from the Trust Property to make comparable pro rata payments to any class 2, 3 or 4 claims that are the subject of a dispute and not yet allowed, with such reserve to be sufficient to make such pro rata payments in the event such disputed class 2, 3 or 4 claims are allowed in the amounts asserted by the creditors. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | The claim of Robert Scullin ("Scullin"). On January 6, 2020, the California Superior Court, County of Los Angeles in a case entitled *Scullin v. NAI et al.* (Case No. BC597601) entered a judgment (the "Scullin Judgment") in favor of Scullin against the Debtor in the amount of $1,888,661.11, which is comprised of unpaid wages of $1,241,645.00 and interest in the amount | Impaired; allowed claim in this class is entitled to vote on the Plan. | Scullin is currently the holder of a disputed claim which is the subject of a pending appeal and possibly equitable subordination. If Scullin votes to accept the Plan, the Debtor will stipulate as part of Plan confirmation (which will be included in the order confirming the Plan) that Scullin shall be deemed to have an allowed class 3 claim in the amount of $1,888,661.11 plus costs and reasonable attorneys' fees, and the Debtor's estate will provide Scullin with a full and complete release. If this occurs, Scullin will share pro rata in the Estate Funds and any Estate Recoveries on account of this class 3 allowed |

| | | | |
|---|---|---|---|
| | of $647,016.11. Pursuant to the Scullin Judgment, the State Court also found that Scullin was the prevailing party and therefore entitled to recover as part of the Scullin Judgment costs and reasonable attorneys' fees, in amounts to be determined by the State Court based on yet to be filed motions. The Debtor disagrees with both the conclusion and the computation of the Scullin Judgment by the State Court, and the Debtor is pursuing an appeal of the Scullin Judgment. The Debtor also believes that the class 3 claim of Scullin may be entitled to be equitably subordinated to class 2 claims. | | claim, and any other Trust Property, and the Debtor will dismiss its pending appeal of the Scullin Judgment. If Scullin does not vote to accept the Plan, the Liquidating Trustee shall decide how to proceed with respect to the pending appeal of the Scullin Judgment and/or whether to seek to equitably subordinate Scullin's class 3 claim. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | While the Debtor disagrees with the Scullin Judgment, the Debtor believes that if Scullin is entitled to unpaid wages and interest from his previous employment by the Debtor, then on the identical theory, Michael Zugsmith ("Zugsmith") and | Impaired; allowed claims in this class are entitled to vote on the Plan. | Zugsmith and Howitt have voluntarily agreed to waive their class 4 claims in their entirety and not receive any portion of the Estate Funds and Estate Recoveries, or any other Trust Property, if the Liquidating Trustee (as the holder of all of the claims, if any, of the Debtor's estate against all third parties) provides them with a full and complete release within three |

| | | Rachel Howitt ("Howitt"), the Debtor's former senior management, are also entitled to unpaid wages and interest in the identical amounts because it was always the agreement of the parties that all three senior officers of the Debtor (comprised of Scullin, Zugsmith and Howitt) would receive identical compensation. Class 4 consists of the claims of Zugsmith and Howitt. | | months following the Effective Date and provided that no party has filed or files an objection to their class 4 claims during the interim and the Liquidating Trustee has not filed any lawsuit against them. If the Liquidating Trustee decides not to provide Zugsmith and Howitt with such a release, then the Liquidating Trustee will make a determination how to proceed with respect to the class 4 claims of Zugsmith and Howitt but would need to reserve a sufficient amount of the Trust Property to enable Zugsmith and Howitt to receive their pro rata share of all Trust Property in the event they ultimately are determined by the Court to have class 4 allowed claims in the amounts asserted by them. |

**4.      Class of Interest Holders**

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Class 5 consists of all equity interests in the Debtor | Impaired; allowed claims in this class are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | Class 5 interest holders will not receive any distribution under the Plan. They will not receive any portion of the Estate Funds or any portion of the Estate Recoveries or any other distribution from the Liquidating Trust on account of their class 5 interests. While the equity interests of the Debtor will not be cancelled under the Plan, they will have no value as all assets of the Debtor and its bankruptcy estate will be transferred and assigned to the Liquidating Trust on the Effective Date, and it is expected that the Debtor will thereafter be dissolved or become a dormant |

| | | | legal entity with no assets. |
|---|---|---|---|

## V.  MEANS OF EFFECTUATING AND IMPLEMENTATION OF THE PLAN

**A.    The Liquidating Trust**

**1.    Execution of Liquidating Trust Agreement.**  On the Effective Date, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court at the Plan Confirmation Hearing shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of all creditors entitled to receive distributions under the Plan from the Liquidating Trust.  The treatment of all claim holders will occur in the manner described above.  All cash distributions to be made on or near the Effective Date will be funded from the Debtor's unencumbered cash, either by the Debtor, or, if the Liquidating Trust has been established, by the Liquidating Trust.

**2.    Purpose of the Liquidating Trust.**  The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing and liquidating all of the funds and property assigned to the Liquidating Trust and pursuing claims and causes of action assigned to the Liquidating Trust under the Plan for the benefit of the creditors entitled to receive distributions under the Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.  The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

**3.    Transfer of Property to the Liquidating Trust.**

a.    On the Effective Date, all right, title and interest of the Debtor and the bankruptcy estate in property and assets of any kind, including the Estate Funds, Estate Recoveries, any causes of action, and any litigation rights (collectively, the "<u>Trust Property</u>") shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to and in trust for the benefit of the beneficiaries of the Liquidating Trust for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and

interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Section 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or the Plan. To the extent that certain assets of the Debtor's or the Debtor's bankruptcy estate (and their right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practical after the Effective Date. The Liquidating Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the Trust Property.

b.      On or after the Effective Date, the Liquidating Trustee shall continue as a plaintiff and/or appellant in all litigation or causes of action (on behalf of beneficiaries of the Liquidating Trust) in which the Debtor was the plaintiff and/or appellant prior to the Effective Date. All recoveries and proceeds arising from litigation and causes of action shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust upon receipt thereof. All fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation, causes of action, appeals or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid as a first priority in right of distribution from the Liquidating Trust.

c.      The transfer of assets of the estate to the Liquidating Trust shall be made for the benefit of the beneficiaries of the Liquidating Trust, but only to the extent the beneficiaries are entitled to distributions under the Plan.

d.      For all federal, state and local income tax purposes, the Debtor, the beneficiaries of the Liquidating Trust, and the Liquidating Trustee shall treat the transfer of the Trust Property to the Liquidating Trust as a transfer of the Trust Property by the Debtor to the beneficiaries of the Liquidating Trust in satisfaction of their claims under the Plan, followed by a transfer of the Trust Property by the beneficiaries of the Liquidating Trust to the Liquidating Trust

in exchange for their beneficial interests in the Liquidating Trust. Thus, the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of the Liquidating Trust.

4.    **Securities Exempt.**    Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the beneficiaries of the Liquidating Trust under the Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

5.    **Governance of Liquidating Trust.**    The Liquidating Trust shall be governed by the Liquidating Trustee and the Liquidating Trust Board in accordance with the Liquidating Trust Agreement and consistent with the Plan. A proposed form of Liquidating Trust Agreement is attached as Exhibit "5" to this Disclosure Statement. The final version of the Liquidating Trust Agreement will be filed with the Court prior to the Plan Confirmation Hearing.

6.    **Designation of Liquidating Trustee.**    David K. Gottlieb, an extremely well known and highly regarded panel trustee in this district, will serve as the trustee of the Liquidating Trust (the "Liquidating Trustee"), subject to the provisions of the Liquidating Trust Agreement. A copy of Mr. Gottlieb's resume is attached as Exhibit "6" to this Disclosure Statement. _____ will serve as the members of the Liquidating Trust Board. The designation of the Liquidating Trustee and the members of the Liquidating Trust Board shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court. The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement and shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute them to the beneficiaries of the Liquidating Trust; (b) take or not take those actions that the

Liquidating Trustee in his business discretion believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust and which actions or inactions are consistent with the Plan. The Liquidating Trustee's responsibilities, duties and obligations are solely to the beneficiaries of the Liquidating Trust. The Liquidating Trustee shall report to and work under the supervision of the Liquidating Trust Board. The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust. The Liquidating Trustee shall be deemed to be a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code and a representative of the Debtor's bankruptcy estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5).

7.    **Rights, Powers and Privileges of the Liquidating Trustee.**    The Liquidating Trustee shall have all of the rights, powers and privileges expressly provided in the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall have the power to take the actions granted in the subsections 4.1.1 through and including 4.1.26 of the Liquidating Trust Agreement and any powers reasonably incidental thereto, that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by the Plan or the Liquidating Trust Agreement.

8.    **Agents and Professionals.**    The Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Trust Property in the ordinary course to the extent permitted herein. The Debtor anticipates that the Liquidating Trustee will employ LNBYB to commence and/or complete the objections to claims process with respect to any disputed claims of creditors who are not insiders of the Debtor and to assist the Liquidating Trustee with the wind down of the Debtor's bankruptcy estate and administrative compliance, such as assisting the Liquidating Trustee to prepare the ongoing financial reporting to the UST, to prepare and file any post-confirmation status reports, dealing with any post-confirmation modifications to the Plan,

and filing and obtaining the entry of a final decree closing the Debtor's Chapter 11 case. The Debtor anticipates that the Liquidating Trustee will employ MKZ in the event the Liquidating Trustee requires for the Liquidating Trust or the Debtor's bankruptcy estate the same type of services that MKZ has been providing to the Debtor during the Debtor's Chapter 11 case. The Debtor anticipates that the Liquidating Trustee will employ KLP in the event the Liquidating Trustee requires for the Liquidating Trust or the Debtor's bankruptcy estate the same type of services that KLP has been providing to the Debtor during the Debtor's Chapter 11 case. Finally, the Liquidating Trustee will employ Shemano for all of the following purposes: (1) to assist the Liquidating Trustee to analyze and, if appropriate, object to and/or negotiate settlements with the claims of any insiders of the Debtor; (2) to assist the Liquidating Trustee to analyze and, if appropriate, prosecute any litigation actions against any insiders of the Debtor (except with respect to Scullin if Scullin votes to accept the Plan because as indicated above that would result in the allowance in full of Scullin's class 3 claim and a full and complete release of Scullin and dismissal of the Debtor's pending appeal of the Scullin Judgment); (3) to assist the Liquidating Trustee to analyze and determine whether to accept the claim and release settlement option available to the Liquidating Trustee with respect to the class 4 claims of Zugsmith and Howitt; and (4) to assist the Liquidating Trustee to analyze and determine whether there are any avoidance actions that should be pursued and, if there are, either to pursue them on behalf of the Liquidating Trust or assist the Liquidating Trustee to locate alternative counsel for this purpose.

**9.** **Investment and Safekeeping of Trust Property.** All monies and other Trust Property received by the Liquidating Trustee shall, until distributed or paid over as provided in the Liquidating Trust Agreement and the Plan, be held in the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust, but need not be segregated from other Trust Property, unless and to the extent required by law or the Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall actually be received by the Liquidating Trustee. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of

ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Property and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

10.    **Limitations on the Liquidating Trustee and Payment of Fees.**  The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneficiaries of the Liquidating Trust: (i) enter into or engage in any trade or business, and no part of the Trust Property or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Trust Property.  The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by the United States Trustee.  The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Liquidating Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.  Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

11.    **Bankruptcy Court Approval of Trustee Actions.**  Except as provided in the Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court.  The Liquidating Trustee shall exercise his business judgment for the benefit of the beneficiaries of the Liquidating Trust in order to maximize the value of the Trust Property and distributions, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Liquidating Trustee shall have

the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Trust Property, the Liquidating Trust, the Liquidating Trust Agreement, the Plan, or the Debtor.  The Liquidating Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Property free and clear of any and all liens, claims and encumbrances.

**12.    Valuation of Trust Property.**  The Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Trust Property.  The valuation shall be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by the Bankruptcy Court.

**13.    Distributions.**  The Liquidating Trustee shall distribute at least quarterly to the beneficiaries of the Liquidating Trust all net cash income plus all net cash proceeds from the liquidation of Trust Property (provided there are meaningful funds available to distribute); provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, including the Disputed Claim Reserve (defined below) as may be reasonably necessary to maintain the value of the Trust Property, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust.  The Liquidating Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

**14.    Pro Rata Share of Distributions.**  Each of the beneficiaries of the Liquidating Trust shall receive its share or pro rata share (as applicable) of any and all distributions made by the Liquidating Trustee.  The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

**15.    Delivery of Distributions.**  All distributions to be made to the beneficiaries of the Liquidating Trust shall be made by the Liquidating Trustee in accordance with the terms of the

Plan.

**16.    Undelivered Property.**  Any beneficiary of the Liquidating Trust that fails to claim any cash within ninety (90) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and shall not be subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such cash (including interest thereon) shall be made available for re-distribution to all other beneficiaries of the Liquidating Trust. Beneficiaries of the Liquidating Trust who fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other beneficiaries of the Liquidating Trust to whom distributions are made under the Plan, provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate beneficiaries of the Liquidating Trust whose distributions are returned as undeliverable or whose checks are not timely cashed.

**17.    De Minimis Distributions.**  No distribution shall be required to be made to any beneficiary of the Liquidating Trust under the Plan and the Liquidating Trust Agreement to any beneficiary unless such distribution will amount to at least $25.00. Any beneficiary of the Liquidating Trust on account of which the amount of cash to be distributed pursuant to any distribution from the Liquidating Trust is less than $25.00 shall be deemed to have no claim for such distribution against the Debtor, the Liquidating Trust, the Liquidating Trustee or the Trust Property.

**18.    Payments Limited to Trust Property.**   All payments to be made by the Liquidating Trustee to or for the benefit of any beneficiary of the Liquidating Trust shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and the Plan.   Each beneficiary of the Liquidating Trust shall have recourse only to the Trust Property for distribution under the Liquidating Trust Agreement and the Plan.

**19.    Fees and Expenses.**  Subject to the limitations set forth in the Liquidating Trust Agreement and in the Plan, the Liquidating Trustee shall pay and/or reserve for the operating and

administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Trust Property.

**20.** __Priority of Distributions.__  Any recovery by the Liquidating Trust on account of the Trust Property shall be applied in the following order:

a.    First, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust, including, without limitation, reasonable professional fees and expenses and court costs;

b.    Second, distributed to the beneficiaries of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan.

**21.** __Compliance with Laws.__  Any and all distributions of Trust Property shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

**22.** __Identification of the Beneficiaries of the Liquidating Trust.__  Each of the beneficiaries of the Liquidating Trust shall be recorded and set forth in a schedule (the "__Beneficiary Schedule__") maintained by the Liquidating Trustee.  In order to determine the actual names and addresses of the beneficiaries of the Liquidating Trust, the Liquidating Trustee may either (i) rely upon the Beneficiary Schedule, or (ii) deliver a notice to the beneficiaries of the Liquidating Trust.  Such notice will include a form for each beneficiary of the Liquidating Trust to complete in order to be properly registered as a beneficiary of the Liquidating Trust and be eligible for distributions under the Liquidating Trust.

**23.** __Beneficial Interest Only.__  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any beneficiary of the Liquidating Trust or the Debtor to any title in or to the Trust Property or to any right to call for a partition or division of such Trust Property or to require an accounting, except as specifically provided in the Liquidating Trust Agreement.

**24.** __Ownership of Beneficial Interests in the Liquidating Trust.__  Subject to the requirements and limitations of the Liquidating Trust Agreement, each beneficiary of the

Liquidating Trust shall own a beneficial interest in the Liquidating Trust equal in proportion to such Trust Beneficiary's pro rata share of its allowed claim under the Plan.

25.   **Evidence of Beneficial Interest.**   Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, including the Beneficiary Schedule.

26.   **Conflicting Claims.**   If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the beneficial interest at issue.  Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

27.   **Limitation on Transferability.**   It is understood and agreed that the beneficial interests in the Liquidating Trust shall not be assignable, other than by operation of law.

**28.    Parties Dealing With the Liquidating Trustee.**    In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Trust Property.  No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the validity, expediency or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

**29.    Trustee's Liability.**    In exercising the rights granted in the Liquidating Trust Agreement and the Plan, the Liquidating Trustee shall exercise his best judgment to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the beneficiaries of the Liquidating Trust and the Debtor are safeguarded.

**30.    Indemnity.**    The Liquidating Trustee and each of the Liquidating Trustee's respective agents, employees, professionals, attorneys, accountants, advisors and representatives (collectively, the "Liquidating Trust Indemnified Parties") shall be indemnified and held harmless by the Liquidating Trust, to the fullest extent permitted by law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of an Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive

the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

**31.** <u>**Initial Liquidating Trustee.**</u>  The Liquidating Trustee shall be David K. Gottlieb.

**32.** <u>**Term of Service of the Liquidating Trustee.**</u>  The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement and the Plan; (b) termination of the Liquidating Trustee in accordance with the Liquidating Trust Agreement; or (c) the Liquidating Trustee's death, resignation or removal.

**33.** <u>**Removal of the Liquidating Trustee.**</u>  The Liquidating Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause.  The removal shall be effective upon the date specified in such entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Liquidating Trustee as of such date.  In the event of any such removal, the Liquidating Trustee shall submit to the Bankruptcy Court and any successor a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee.

**34.** <u>**Resignation of the Trustee.**</u>  The Liquidating Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so. In the event of a resignation, the resigning Liquidating Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee.  The resignation shall be effective on the later to occur of:  (i) the date specified in the notice; or (ii) the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; *provided*, that if a successor Liquidating Trustee is not appointed or does not accept his appointment within ninety (90) days following delivery of notice of resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

**35.** <u>**Appointment of Successor Trustee.**</u>  Upon the resignation, death, incapacity, or removal of the Liquidating Trustee, a successor Liquidating Trustee shall be appointed pursuant

to an order of the Bankruptcy Court.  Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of the Liquidating Trust Agreement and agree that the provisions of the Liquidating Trust Agreement and the Plan shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

**36.    Powers and Duties of Successor Trustee.**  A successor Liquidating Trustee shall have all the rights, privileges, powers, and duties of his predecessor under the Agreement and the Plan.  Notwithstanding anything to the contrary herein, a removed or resigning Trustee shall, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Trust Agreement all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

**37.    Trust Continuance.**  The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.  In the event that a successor Trustee is not appointed within thirty (30) days of when required under this Agreement, any Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Trustee upon notice to the Trustee.

**38.    Compensation and Costs of Administration.**  As compensation for providing his services for serving as the Liquidating Trustee pursuant to the terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall receive compensation pursuant to the regular trustee fee schedule contained in Section 326 of the Bankruptcy Code plus be reimbursed for all expenses incurred.

**39.    Annual Reporting and Filing Requirements.**  The Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations, and shall furnish information statements to the Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Trust and instruct them to report such items on their federal income tax returns.  The Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other

governmental requirement.  The Trustee shall have the right to employ an accountant and any other professionals needed to assist the Trustee for this purpose.  The tax returns filed by the Trustee shall report all Trust earnings for the taxable year being reported.  All of the Trust's income shall be treated as subject to tax on a current basis.  For federal income tax purposes, items of income, gain, loss, and deduction of the Trust will be allocated to the Trust Beneficiaries in a manner, to be determined by the Trustee, that is consistent with applicable Treasury Regulations and that reflects the Trust Beneficiaries' respective contributions and their respective interests in the interim and final distributions to be made by the Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

40.    **Confidentiality.**  The Liquidating Trustee shall, while serving as the Liquidating Trustee under the Liquidating Trust Agreement and for a period of twelve (12) months following the termination of the Liquidating Trust Agreement or following his removal or resignation thereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relate or of which he/she has become aware in his capacity as Liquidating Trustee.

41.    **Maintenance of Records.**  The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements.  Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee or other notice provided for under applicable law, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours; *provided* that, if so requested, such beneficiary of the Liquidating Trust shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee; *provided further* that, the Liquidating Trust may transfer records for property in which it or the Debtor holds or previously held an interest, upon the transfer of the property and/or its interest therein, as provided under applicable law.  The Liquidating Trustee shall furnish to any beneficiary of the Liquidating Trust upon written request an annual statement of receipts and disbursements of the Liquidating Trust.

**42.    Duration of the Liquidating Trust.**  The Liquidating Trust shall become effective upon the Effective Date of the Plan.  Thereupon, the Liquidating Trust Agreement shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of the Liquidating Trust Agreement and the Plan.

**43.    Termination of the Liquidating Trust.**  The Liquidating Trust (and the duties, responsibilities and powers of the Liquidating Trustee) shall terminate on the later of (a) the date which is five (5) years after the Effective Date; and (b) the date when full resolution of all Trust Property transferred to the Liquidating Trust has occurred, including distribution of the Trust Property and the net proceeds thereof, in accordance with the Plan and the Liquidating Trust Agreement, provided however, that for cause the Liquidating Trustee may seek earlier termination of the Liquidating Trust upon application to the Bankruptcy Court.  The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Trust Property and to effect the distribution of the Trust Property to the beneficiaries of the Liquidating Trust in accordance with the Plan and terminate the Liquidating Trust as soon as practicable.  Upon such termination, except as otherwise set forth in the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be discharged from his position as Liquidating Trustee and from all further duties, obligations and responsibilities under the Plan.

**44.    Continuance of the Liquidating Trust for Winding Up.**  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Liquidating Trust.    After the termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of five (5) years the books, records, beneficiary lists, and certificates and other documents and files that have been created by the Liquidating Trustee. At the Liquidating Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after five (5) years from the completion and winding up of the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all

liabilities of the Liquidating Trust and final distribution of the Trust Property, the Liquidating Trustee shall have no further duties or obligations under the Plan or the Liquidating Trust Agreement.  The Liquidating Trustee may pay in advance from the Trust Property all costs of document management.

**45.    Preservation of Privilege.**  In connection with the rights, claims, and causes of action that constitute the Trust Property, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust pursuant to the terms of the Plan or otherwise shall vest in the Liquidating Trustee and his representatives, and the Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

**46.    No Bond.**  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

**47.    Governing Law of the Liquidating Trust.**  The Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

**48.    Successors and Assigns.**  The Liquidating Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

**49.    No Execution.**  All Trust Property shall be deemed *in custodia legis* until such times as the Trust Property has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no beneficiary of the Liquidating Trust or any other person can execute upon, garnish or attach the Trust Property or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by an order of the Bankruptcy Court that becomes a final order.  Payment will be solely governed by the Liquidating Trust Agreement and the Plan.

**50.    Intention to Establish Grantor Trust.**  The Liquidating Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

**51.    Amendment of the Liquidating Trust Agreement.**  The Liquidating Trust

Agreement may be amended at any time by order of the Bankruptcy Court after motion by the Liquidating Trustee.

**B.    Settlement Agreements**

Any settlement effectuated prior to the confirmation of the Plan, upon notice thereof to the Bankruptcy Court, shall be deemed incorporated into the Plan and the Plan Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.  The Liquidating Trustee shall have the right to enter into settlements after the Effective Date without the requirement of an order of the Bankruptcy Court, but the Liquidating Trustee reserves the right to seek such an order of the Bankruptcy Court if the other party requires it and/or if the Liquidating Trustee determines that doing so is in the best interests of the beneficiaries of the Liquidating Trust.

**C.    Claims Administration and Prosecution and Plan Distributions.**

On and after the Effective Date, in addition to the rights provided to the Liquidating Trustee in the Liquidating Trust Agreement, the Liquidating Trustee shall have the power and authority to prosecute and resolve objections to any disputed claims.  The Liquidating Trustee shall have the right, power and authority to retain and assert all defenses, rights of setoff, recoupment and counterclaims with respect to each of the foregoing.  The Liquidating Trustee shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of allowed claims consistent with the Plan and the Liquidating Trust Agreement.

**D.    Books and Records of the Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until two years after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer

period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable non-bankruptcy law.  Notwithstanding the foregoing, before destroying any of the Debtor's books and records, the Liquidating Trustee shall provide the Debtor's majority owners and the Merger Partner no less than sixty (60) days' prior written notice which provides for a reasonable opportunity to receive them and/or make copies of them.  For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor and in and to their books and records, wherever located.

The Debtor or the Liquidating Trust may transfer records for property in which either holds or previously held an interest, upon the transfer of the property and/or the interest therein, as provided under applicable law.  Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours.

**E.      Corporate Action**

On the Effective Date, the Liquidating Trustee may perform each of the actions and effect each of the transfers required by the terms of the Plan in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the directors or comparable governing body of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the directors (or other governing body) of the Debtor.

**F.      Effectuating Documents and Further Transactions**

The Liquidating Trustee is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Liquidating Trust Agreement.

**G.**     **Transfers of Property under the Plan**

To the extent Bankruptcy Code Section 1129(a)(16) is applicable, all transfers of property by the Debtor under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a nonprofit organization.  Furthermore, to the extent that applicable law requires the Debtor to obtain the consent of the United States, or an agency thereof, for the Debtor to transfer property in which the United States or an agency thereof, has an interest, to the Liquidating Trust, and the United States and/or its applicable agency does not consent, such property shall remain in the possession of the Debtor's bankruptcy estate and shall not be transferred to the Liquidating Trust, but shall be liquidated pursuant to applicable law by the Liquidating Trustee in his capacity as the representative of the Debtor's bankruptcy estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5).

**H.**     **Dissolution of the Debtor**

On the Effective Date, and after the transfer of the Trust Property to the Liquidating Trust, the Debtor shall be dissolved, or shall otherwise wind down, under applicable law, and all of the members of the Debtor's Board of Directors shall be free to resign if they so desire without any negative repercussions to the Debtor or its bankruptcy estate.

**I.**      **Procedures for Disputed, Contingent, or Unliquidated Claims**

**1.**     **Objections to Claims.**  From and after the Effective Date, the Liquidating Trust shall be entitled to object to any and all claims against the Debtor's bankruptcy estate, including commencing any such claims objections or continuing pursuit of any claims objections that had been commenced by the Debtor before the Effective Date but had not been resolved by the Effective Date.

**2.**     **No Distribution Pending Allowance of Claims.**  Notwithstanding any other provision of the Plan, if any portion of a claim is a disputed claim, no payment or distribution provided under the Plan shall be made on account of such disputed claim unless and until such disputed claim becomes an allowed claim, but the Liquidating Trustee shall maintain reserves on account of such disputed claims as otherwise provided for herein.

**3.**     **Reserves on Account of Disputed Claims.**

    a.  <u>Establishment and Maintenance of a Reserve for Disputed Claims</u>. The Liquidating Trust shall maintain a disputed claim reserve (the "<u>Disputed Claim Reserve</u>") at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such disputed claims would be entitled under the Plan if such disputed claims were allowed claims in their disputed claim amounts or such lesser amount as required by a final order of the Bankruptcy Court.  The Bankruptcy Court may fix or liquidate the amount of any disputed claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the disputed claims for purposes of distribution under the Plan.  In lieu of fixing or liquidating the amount of any disputed claim, the Bankruptcy Court may determine the amount to be reserved for such disputed claim or such amount may be fixed by agreement in writing between the Liquidating Trustee and the holder of a disputed claim.

    b.  <u>Distributions upon Allowance of Disputed Claims</u>. The holder of a disputed claim that becomes an allowed claim shall receive a distribution(s) in cash from the Disputed Claim Reserve as set forth in, and subject to the terms of the Plan and the Liquidating Trust Agreement.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the disputed claim had been an allowed claim on or prior to the Effective Date.  No holder of a disputed claim shall have any claim against the Disputed Claim Reserve or the Liquidating Trust with respect to such disputed claim until such disputed claim becomes an allowed claim, and no holder of a disputed claim shall have any right to interest on such disputed claim.

   **4.**  **Estimation.**  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or disputed claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor of the Liquidating Trust previously objected to such claim, and the Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated or disputed claim, the amount so estimated shall constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined

by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**J.      Distributions to be Made Pursuant to the Plan**

Distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim timely filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**K.      Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Merger Partner, the Liquidating Trust, the Liquidating Trustee, the Creditors' Committee, nor any of their employees, officers, directors, shareholders, predecessors, agents, members, representatives, or attorneys or other professionals employed or retained by any of them, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan or the Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.

**L.      Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Effective Date, all entities that

have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of a creditor or equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Merger Partner, the Liquidating Trust, or their property on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.

Notwithstanding the foregoing, nothing in the Plan or the Plan Confirmation Order shall affect, waive, limit, or enjoin the United States' rights, if any, of setoff or recoupment against the Debtor and/or its successors and assigns and such rights, if any, are expressly preserved.

**M.    Executory Contracts and Unexpired Leases**

On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor and which are identified in Exhibit "3" hereto shall be deemed to be assumed by the Debtor and assigned to the Merger Partner and to become valid and binding executory contracts and unexpired leases of the Merger Partner (the "Assumed Contracts and Leases"). By 5:00 p.m. PST on the day that is 21 days prior to the date of the Plan Confirmation Hearing, the Debtor (at the direction of the Merger Partner) will file a pleading with the Court identifying any changes (additions or deletions) to the list of the Assumed Contracts and Leases. All of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor and which are not included among the Assumed Contracts and Leases shall be deemed rejected effective as of 11:59 PST on the Effective Date. With respect to all of the Assumed Contracts and Leases for which a default exists on the Effective Date, (a) the Debtor will be required to cure or provide adequate assurance that the Debtor (or the Merger Partner) will promptly cure any default existing

under any such executory contracts and unexpired leases (the "Cure Amount"), (b) the Debtor will be required to compensate or provide adequate assurance that the Debtor (or the Merger Partner) will promptly compensate any other party to such executory contracts and unexpired leases for any actual pecuniary loss to such parties resulting from any default existing under any such executory contracts and unexpired leases (the "Pecuniary Loss Amount"), and (c) the Merger Partner will provide to the Court any evidence necessary to enable the Merger Partner to demonstrate adequate assurance of future performance under all such Assumed Contracts and Leases. Exhibit "3" hereto identifies all Cure Amounts and all Pecuniary Loss Amounts, if any, that the Debtor believes to exist with respect to each of the Assumed Contracts and Leases (the "Identified Cure and Pecuniary Loss Amount"). Unless the counter-party to each of the Assumed Contracts and Leases files a pleading with the Court at least 14 days prior to the Plan Confirmation Hearing disputing the Debtor's Identified Cure and Pecuniary Loss Amount, such counter-party shall be deemed to have consented to such Identified Cure and Pecuniary Loss Amount and such Identified Cure and Pecuniary Loss Amount shall be deemed to be the only amount that must be paid by the Debtor (or the Merger Partner) to such counter-party in connection with the Debtor's assumption and assignment to the Merger Partner of such Assumed Contract and Lease. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.** Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**N.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to any governmental regulatory commission approval of its rates.

## O.      Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.       To resolve any and all disputes regarding the operation and interpretation of the Plan;

ii.      To resolve any and all disputes regarding the operation and interpretation of the Plan Confirmation Order;

iii.     To determine the allowability, classification, or priority of claims upon objection by the Debtor, the Liquidating Trustee, or any other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date;

iv.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

v.       To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

vi.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vii.     To determine any request for payment of administrative expenses;

viii.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

ix.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this bankruptcy case whether before, on, or after the Effective Date including avoidance causes of action, and the Liquidating Trustee shall have the right and standing to commence any avoidance causes of action after the Effective Date and to continue with the prosecution of any avoidance causes of action commenced by the Debtor prior to the Effective Date;

x.     To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

xi.     To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

xii.     Except as otherwise provided in the Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xiii.    To issue such orders in aid of consummation of the Plan or the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiv.     To enter a final decree closing the Debtor's Chapter 11 case.

## VI.    TAX CONSEQUENCES OF THE PLAN

**INTERNAL REVENUE SERVICE ("IRS") CIRCULAR 230 DISCLOSURE:    TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, EACH HOLDER OF A CLAIM IS HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL INCOME TAX CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE**

**INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "<u>TAX CODE</u>"); (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

The following disclosure (the "<u>Tax Disclosure</u>") summarizes certain federal income tax consequences of the implementation of the Plan to holders of allowed general unsecured claims and the Debtor. It does not address the specific federal income tax consequences to those with a unique position with respect to their treatment. Priority claims are also not specifically addressed. General withholding obligations are, however, addressed for all holders of claims.

Moreover, the Tax Disclosure summarizes only some of the federal income tax consequences associated with the Plan's implementation; other consequences are not addressed. Certain of the federal income tax consequences described in the Tax Disclosure are complex and are subject to uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. It is important to note that the Debtor has not retained any tax professional, including any tax counsel or tax accountant.

In addition, the Tax Disclosure does not attempt to consider any facts or limitations applicable to any particular holder of a claim which may modify or alter the consequences described below. Examples of particular taxpayers who might have special tax treatment include but are not limited to those who hold a claim as a capital asset, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities. The Tax Disclosure also does not address state, local, or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

The following summary is based on the Tax Code, the regulations promulgated thereunder by the Department of the Treasury ("<u>Treasury Regulations</u>"), judicial decisions, and published

administrative rules and pronouncements of the IRS in effect on the date hereof.  Changes in, or new interpretations of, such rules may have retroactive effect and could significantly affect the federal income tax consequences described below.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF A HOLDER OF A CLAIM.  EACH HOLDER OF A CLAIM IS URGED TO CONSULT HIS, HER OR ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

**A.    Withholding Applicable to all Holders of Claims**

All payments transferred under the Plan are subject to applicable tax withholding (including employment tax withholding).

Under federal income tax law, interest and other reportable payments may be subject to "backup withholding".  Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails to report properly interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding.

**B.    Tax Consequences to Holders of Allowed General Unsecured Claims**

**1.    Recognition of Gain or Loss Generally**

Pursuant to the Plan, on the Effective Date, general unsecured creditors will receive on account of their allowed claim, in full and complete satisfaction thereof, one or more *pro rata* distributions of the cash in the Liquidating Trust based upon the amount of the respective holder's allowed claim and claim priority.  In general, each holder of such an allowed claim will recognize gain or loss in an amount equal to the difference between (i) the sum of the amount of any cash and

49

the fair market value of any other property that such claim holder receives in satisfaction of its claim (other than in respect of any claim for accrued but unpaid interest, and excluding any portion required to be treated as imputed interest due to the post-Effective Date distribution of such consideration upon the resolution of disputed claims), and (ii) such holder's adjusted tax basis in its claim (other than any claim for accrued but unpaid interest).

Due to the possibility that a holder of an allowed claim may receive more than one distribution subsequent to the Effective Date, the imputed interest provisions of the IRC may apply to treat a portion of such later distributions to such holders as imputed interest.  In addition, it is possible that any loss realized by a holder in satisfaction of an allowed claim may be deferred until all subsequent distributions relating to disputed claims are determinable, and that a portion of any gain realized may be deferred under the "installment method" of reporting.  Holders of such allowed claims are urged to consult their own tax advisors regarding the possibility for deferral and the potential ability to elect out of the installment method of reporting any gain realized in respect of their claims.

Where a claimant recognizes gain or loss in respect of its claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the claimant, whether the claim constitutes a capital asset in the hands of the claimant and how long it has been so held, whether the claimant had acquired the claim at a market discount, and whether and to what extent the claimant had previously claimed a bad debt deduction.  A claimant that purchased its claim from a prior claimant at a market discount may be subject to the market discount rules of the IRC.  Under those rules, assuming that the claimant has made no election to amortize the market discount into income on a current basis with respect to any market discount instrument, any gain recognized on the exchange of such claim (subject to a *de minimis* rule) generally would be characterized as ordinary income to the extent of the accrued market discount on such claim as of the date of the exchange.

**2.    Distributions in Payment of Accrued But Unpaid Interest**

Distributions to any holder of an allowed claim will be allocated first to the original principal portion of such claim as determined for federal income tax purposes, and then, to the

extent the consideration exceeds such amount, to the portion of such claim representing accrued but unpaid interest. However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.

To the extent a holder of debt receives an amount of cash or property in satisfaction of interest accrued during its holding period, such claimant generally recognizes taxable interest income in such amount (if not previously included in the claimant's gross income). Conversely, a claimant generally recognizes a deductible loss to the extent any accrued interest claimed was previously included in its gross income and is not paid in full. Each claimant is urged to consult its own tax advisor regarding the allocation of consideration and the deductibility of unpaid interest for U.S. federal income tax purposes.

**C.    Tax Consequences for the Debtor**

The Debtor has not done any analysis of whether the Debtor has any previous net operating loss and, if it does, what the impact of the confirmation of the Plan will have upon any such accumulated net operating loss. The Debtor assumes that the confirmation of the Plan may result in the loss or elimination of any such accumulated net operating loss. While the Debtor has not retained any tax professional to analyze the tax impact, if any, of the confirmation of the Plan upon the Debtor, the Debtor is not aware of any negative tax consequences to the Debtor resulting from the confirmation of the Plan.

**VII.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, that they may wish to consider, as well as certain deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm a plan. Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan,

whether the plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

## A.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

## B.      Who May Vote to Accept/Reject the Plan

A creditor has a right to vote for or against the Plan if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

## C.      What Is an Allowed Claim

As noted above, a creditor must first have an <u>allowed claim</u> to have the right to vote. Generally, any proof of claim will be allowed, unless a party in interest files an objection to the claim.  When an objection to a claim is filed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS IS JULY 31, 2020 WITH RESPECT TO ALL CREDITORS EXCEPT FOR GOVERNMENTAL UNITS.   THE BAR DATE FOR GOVERNMENTAL UNITS TO FILE A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS IS JULY 29, 2020.  A creditor may have an allowed claim even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.

As previously indicated, a detailed claims chart is attached hereto as Exhibit "2" (defined above as the "<u>Claims Chart</u>").  The Claims Chart identifies all claims that were scheduled by the Debtor, including the amounts and priorities of the claims and whether the Debtor contends that the claims are disputed, contingent or unliquidated.  The Claims Chart also identifies all proofs of claim that were filed by creditors asserting claims against the Debtor, including the amounts and

priorities of the claims asserted.   Finally, the Claims Chart indicates whether the Debtor has disputed or presently disputes any portion of the claims.   The Debtor reserves the right to update and modify the Claims Chart at any time, and the Debtor and the Liquidating Trust reserve all rights to file and prosecute an objection to any claim even if the Claims Chart does not identify any dispute relating to a particular claim.

**D.    What Is an Impaired Claim.**

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is <u>impaired</u> under the Plan.   A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.   For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

The Debtor believes that members of classes 1-4 are impaired and are entitled to vote to accept or reject the Plan.   The Debtor believes that members of class 5 are not entitled to vote on the Plan because they are deemed to have rejected the Plan since they will not be receiving any property under the Plan.   Parties who dispute the Debtor's characterization of their claim as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

**E.    Who Is <u>Not</u> Entitled to Vote.**

The following four types of claims are <u>not</u> entitled to vote:   (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.   Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.   Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.   Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.   EVEN IF YOUR CLAIM IS OF

THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.    Who Can Vote in More Than One Class.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**G.    Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.    Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan.

**I.    Treatment of Non-Accepting Classes.**

As noted above, even if _all_ impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**J.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The Debtor will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan.

**K.    Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant is in an impaired class and that claimant does not vote to accept the Plan, then that claimant must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.

For the Court to be able to confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation of the Debtor.  The Debtor maintains that this requirement is clearly met in this case.

The Debtor believes that in the event of a conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, all of the Brokers would terminate their agreements with the Debtor and enter into new agreements with an alternative real estate company.  Under such a Chapter 7 bankruptcy scenario, the Debtor and its creditors would thereby not receive the $750,000 Initial Cash Component from the Merger Partner nor receive the Merger Partner Promissory Note.  Moreover, under such a Chapter 7 bankruptcy scenario, all of the Debtor's executory contracts and unexpired leases would be rejected, which would dramatically increase the total amount of the Debtor's debt resulting from all such rejection damage claims, the vast majority of which will be avoided by the Merger Partner's assumption of most of the Debtor's executory contracts and unexpired leases.  Finally, in a Chapter 7 bankruptcy scenario, there would be the addition of the fees and expenses of the Chapter 7 trustee and his/her professionals.  Based upon the current extent of Chapter 11 administrative claims (both professional fees and expenses and the unpaid post-petition debts of the Debtor) and the projected

expenses of a Chapter 7 trustee, the Debtor does not believe that there would be any recovery whatsoever for any pre-petition creditors in the event of a conversion of the Debtor's Chapter 11 bankruptcy case to a case under Chapter 7 of the Bankruptcy Code.   The Debtor therefore believes that all creditors will receive more under the Plan than they would receive in a Chapter 7, thereby satisfying the "Best Interest Test" with respect to any creditor who votes against the Plan. The Debtor also submits that the Plan provides fair and equitable treatment to all classes of creditors.

**L.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses that are entitled to be paid on such date.  As indicated above, the Merger Partner will be required to deposit the $750,000 Initial Cash Component into an escrow account maintained by LNBYB at least 21 days prior to the Plan Confirmation Hearing so that there is no risk that the Initial Cash Component would not be received by the Debtor following the confirmation of the Plan.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  There are two primary components to this aspect of the Plan.  One has to do with the Pending Transactions for which there will be no risk of collection by the Debtor because the Debtor (and/or the Liquidating Trustee) will notify all other parties to all Pending Transactions, including all relevant escrow companies, that they are to pay the commissions owing to the Debtor directly to the Liquidating Trustee who will then pay the Debtor's Brokers their portion of such commissions and retain the balance as Trust Property.  The other has to do with the Merger Partner Promissory Note which will obligate the Merger Partner to pay 3% of net commissions received by the Merger Partner (i.e., after the Brokers have been paid their share) from sale and lease transactions consummated by the Debtor's Brokers who

become associated with the Merger Partner for the first three years following the Effective Date. Given the fact that these payments will be made only from actual sale and lease transactions that close, the Debtor does not believe that there is any realistic risk that the Merger Partner will not make these payments to the Liquidating Trustee, but it will be the responsibility of the Liquidating Trustee and his professionals to make sure that they are continuously being apprised by the Merger Partner of the extent, timing and amount of all such sale and lease transactions.

Based upon all of the foregoing, the Debtor believes that it has satisfied the feasibility aspects of the Plan.

VIII.    RISK FACTORS REGARDING THE PLAN

For all of the reasons described above, the Debtor does not believe that there is any meaningful risk to the Debtor's (or as applicable the Liquidating Trustee's) ability to satisfy the Plan obligations to the Debtor's creditors.

IX.    EFFECT OF CONFIRMATION OF THE PLAN

**A.    Discharge.**

The Debtor will not receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because the Debtor will not be engaging in any business after consummation of the Plan.

**B.    Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Liquidating Trust may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**C.    Post-Confirmation Status Reports.**

Until a final decree closing the Debtor's Chapter 11 case is entered, the Liquidating Trust will file a quarterly status report with the Bankruptcy Court explaining what progress has been

made toward consummation of the confirmed Plan, and the Liquidating Trust will pay out of the

Trust Property the required quarterly payments to the UST.

**D.    Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the

Debtor's Chapter 11 case under Section 1112(b) of the Bankruptcy Code after the Plan is

confirmed if there is a default in performing the Plan.    If the Bankruptcy Court orders the

Debtor's Chapter 11 case converted to Chapter 7 after the Plan is confirmed, then all property that

had been property of the Chapter 11 estate, and that has not been disbursed or transferred to the

Merger Partner pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay

will be reimposed upon the revested property, but only to the extent that relief from stay was not

previously authorized by the Bankruptcy Court during the Chapter 11 case.    The Plan

Confirmation Order may also be revoked under very limited circumstances.    The Bankruptcy

Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in

interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

the Plan Confirmation Order.

**E.    Final Decree.**

Once this Chapter 11 estate has been fully administered as referred to in Bankruptcy Rule

3022, the Liquidating Trust will file a motion with the Bankruptcy Court to obtain a final decree

to close the Debtor's Chapter 11 case.    The Liquidating Trust shall be responsible for the timely

payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) from the Trust Property.

Dated: June 2, 2020

NAI CAPITAL, INC.

By: _Chris Jackson_ _____

    CHRIS JACKSON, Executive Managing Director and Authorized Agent of the Debtor

Presented By:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By:____/s/ Ron Bender_____
      RON BENDER
      TODD M. ARNOLD
      LINDSEY L. SMITH
      Attorneys for Chapter 11
      Debtor and Plan Proponent

Exhibit "1"

Schedule of Acquired Assets

## [TO BE SUPPLIED]

Exhibit "2"

Claims Chart

| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SCHEDULED CLAIM | | | | FILED CLAIM | | | | | ESTIMATED CLAIMS | |
| 420 Group, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| A T & T | | | $160.50 | | | | | | | | | $160.50 |
| Abbi Lapus | | $0.00 | | | | | | | | | $0.00 | |
| ABM Parking - Downtown | | | $0.00 | | | | | | | | | $0.00 |
| ABM Parking - WestLA | | | $0.00 | | | | | | | | | $0.00 |
| ABM Parking Services - Encino | | | $0.00 | | | | | | | | | $0.00 |
| Abstrakt Marketing Group LLC | | | $0.00 | | | | | | | | | $0.00 |
| Adam B. Comora | | | $0.00 | | | | | | | | | $0.00 |
| Adobe Acrobat - Vendor | | | $0.00 | | | | | | | | | $0.00 |
| Aetna | | | $0.00 | | | | | | | | | $0.00 |
| Aflac - Insurance | | | $0.00 | | | | | | | | | $0.00 |
| AIR Commercial Real | | | $0.00 | | | | | | | | | $0.00 |
| Albert P Abel | | | $0.00 | | | | | | | | | $0.00 |
| Alturas Capital Partners | | | $0.00 | | | | | | | | | $0.00 |
| Alvin Lalas | | $0.00 | | | | | | | | | $0.00 | |
| Amazon Web Services, Inc. | | $0.00 | | | | | | | | | $0.00 | |
| Angelica Leyva | | | $0.00 | | | | | | | | | $0.00 |
| Angelle Grace Wacker | | $0.00 | | | | | | | | | $0.00 | |
| Anthony M. Michelman | | | $0.00 | | | | | | | | | $0.00 |
| Arnold Holdings Group | | | $0.00 | | | | | | | | | $0.00 |
| Arvin Poblete | | | $0.00 | | | | | | | | | $0.00 |
| Attalla Real Estate Services, Inc. | | $0.00 | | | | | | | | | $0.00 | |
| Azalea Millet | | | $0.00 | | | | | | | | | $0.00 |
| Benedict & Co., Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Benjamin Hung | | | $0.00 | | | | | | | | | $0.00 |
| Berkshire Hathaway | | | $0.00 | | | | | | | | | $0.00 |
| Biggie Red, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Bianca Enriquez | | $0.00 | | | | | | | | | $0.00 | |
| Brian Luft | | | $0.00 | | | | | | | | | $0.00 |
| Broadway Michelson LLC - Orange County R | | $0.00 | | | | | | | | | $0.00 | |
| Brun Capital, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Buildout, Inc. - Vendor | | | $0.00 | | | | | | | | | $0.00 |
| Byron A. Bisteuller, Jr. | | | $0.00 | | | | | | | | | $0.00 |
| California Desert Association - VENDOR ML | | $3,405.07 | $12,417.73 | | | | | | | | $3,405.07 | $12,417.73 |
| Campbell Realty Advisors, Inc. | | | $305.32 | | | | | | | | | $305.32 |
| Canon Solutions America, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Capital Commercial Real Estate | | | $0.00 | | | | | | | | | $0.00 |
| Capital Realty | | | $0.00 | | | | | | | | | $0.00 |
| Capital Realty | | $9,649.82 | $11,000.00 | | | | | | | | $9,649.82 | $11,000.00 |
| Carl E. Anderson | | | $0.00 | | | | | | | | | $0.00 |
| Carlton West Properties, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| CDW | | | $0.00 | | | | | | | | | $0.00 |
| Chan Properties Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Charles Cameron Hall | | $0.00 | | | | | | | | | $0.00 | |
| Charles Carmichael | | | $0.00 | | | | | | | | | $0.00 |
| Charles Frederick Dunn | | | $0.00 | | | | | | | | | $0.00 |
| Charloma CRE, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Charlotte Pope | | $0.00 | | | | | | | | | $0.00 | |
| Charter Communications dba Spectrum Busi | | | $199.96 | | | | | | | | | $199.96 |
| Chase Visa | | | $0.00 | | | | | | | | | $0.00 |
| Cheryl Pestor | | | $0.00 | | | | | | | | | $0.00 |
| Cheyshonna Real Estate Group, Inc. | | $13,650.00 | $13,830.98 | | | | | | | | $13,650.00 | $13,650.00 |
| Chris Jackson | | $0.00 | $150,830.98 | | | | | | | | $0.00 | $150,830.98 |
| Christine Salazar | | | | | | | | | | | | |

| Creditor | SCHEDULED CLAIM | | | | FILED CLAIM | | | | | ESTIMATED CLAIMS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
| Christopher S. Raczynski | | | $0.00 | | | | | | | | | $0.00 |
| Cimarron Sign Services, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Citicard M/C | | | $0.00 | | | | | | | | | $0.00 |
| Citrus Valley Association of Realtors | | | $11,886.13 | | 3 | 2/21/20 | | | | | | $11,886.13 |
| Coldwell Banker | | | $0.00 | | | | | | | | | $0.00 |
| Commercial Capital & Business Solutions | | | $0.00 | | | | | | | | | $0.00 |
| Commercial Real Estate Owner Support Inc | | | $0.00 | | | | | | | | | $0.00 |
| Contemporary Information Company | | | $168.00 | | | | | | | | | $168.00 |
| CoStar Realty Information, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| CREW Network | | | $390.00 | | | | | | | | | $390.00 |
| Curtis Franklin | | $0.00 | | | | | | | | | | $0.00 |
| CVFI- S Lake Avenue, LP - Pasadena Rent | | | $0.00 | | | | | | | | | $0.00 |
| CVFI- S Lake Avenue, LP - Pasadena Park | | | $0.00 | | | | | | | | | $0.00 |
| D & G Capital Investments, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Dan A. Spell | | | $0.00 | | | | | | | | | $0.00 |
| Daniel Miller | | | $0.00 | | | | | | | | | $0.00 |
| Daniel P. Walsh | | | $0.00 | | | | | | | | | $0.00 |
| Daniel R. Mudge | | | $0.00 | | | | | | | | | $0.00 |
| Daniel Vlessing | | | $0.00 | | | | | | | | | $0.00 |
| Danny Castaneda | | $0.00 | | | | | | | | | | $0.00 |
| Dave Maron dba Maron Commercial, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| David Shanfeld | | $0.00 | | | | | | | | | | $0.00 |
| David W. Moore | | $0.00 | | | | | | | | | | $0.00 |
| Dawn M. Lowder dba Community Consulting | | | $0.00 | | | | | | | | | $0.00 |
| dealingpath, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Deborah K Luedy | | $0.00 | | | | | | | | | | $0.00 |
| Deborah Nash | | $0.00 | | | | | | | | | | $0.00 |
| Delia Medina | | | $0.00 | | | | | | | | | $0.00 |
| Delorme R. Valens | | $0.00 | | | | | | | | | | $0.00 |
| Dennis Pontiliano | | $0.00 | | | | | | | | | | $0.00 |
| Diane Sullivan | | $0.00 | | | | | | | | | | $0.00 |
| Digital Map Products, Inc. - Vendor | | | $0.00 | | | | | | | | | $0.00 |
| Dominic Figuro | | $0.00 | | | | | | | | | | $0.00 |
| Donna Roth | | | $0.00 | | | | | | | | | $0.00 |
| Dorchex, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Douglas Emmett 2014, LLC - West LA Rent | | | $0.00 | | | | | | | | | $0.00 |
| Douglas Emmett 2014, LLC-Encino Rent | | | $0.00 | | | | | | | | | $0.00 |
| Douglas F. Wuebena | | | $0.00 | | | | | | | | | $0.00 |
| Douglas J Golden | | | $0.00 | | | | | | | | | $0.00 |
| Dow Jones - WSJ Subscription | | | $0.00 | | | | | | | | | $0.00 |
| Dror Ambar | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| Edwina Roberts | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| Eileen Foss | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| EMPLOYERS PREFERED INS. CO. | | | $0.00 | | | | | | | | | $0.00 |
| Employment Development Department | | | $0.00 | | | | | | | | | $0.00 |
| Epsteen & Associates | | $0.00 | | | | | | | | | | $0.00 |
| Eric H. Leon | | | $0.00 | | | | | | | | | $0.00 |
| Eric P Hasselijan | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| ESRI, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| ESRI, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Evelyn Ortiz | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| Fariba Kavian | | | $0.00 | | | | | | | | | $0.00 |
| Faye C. Montgomery | | | $0.00 | | | | | | | | | $0.00 |
| Felisha Mejia | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| Ford Harrison LLP | | | $30,056.89 | | | | | | | | | $30,056.89 |
| Foresight Real Estate Investment, Inc. | | | $0.00 | | | | | | $8,444.25 | | | $8,444.25 |

| Creditor | SCHEDULED CLAIM | | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
| Fouz Enterprises | $0.00 | | | | | | | | | | | $0.00 |
| Franchise Tax Board | | | $120.98 | | 8 | 5/18/20 | | | $136.83 | | | $136.83 |
| Frontier Communications | | | $0.00 | | | | | | | | | $0.00 |
| Gary Kreft | | $0.00 | $0.00 | | | | | | | | | $0.00 |
| General Logistics Systems US, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| General Logistics Systems US, Inc. | | | $844.53 | | | | | | | | | $844.53 |
| Geraldine Armstrong | | | $0.00 | | | | | | | | | $0.00 |
| Gianpaolo Startia | | | $0.00 | | | | | | | | | $0.00 |
| Gibraltar Investment Partners | | | $0.00 | | | | | | | | | $0.00 |
| Gil Lara | | | $0.00 | | | | | | | | | $0.00 |
| Ginsberg Trust | | | $150,000.00 | | | | | | | | | $150,000.00 |
| Glenn Melnick | | | $0.00 | | | | | | | | | $0.00 |
| Golden State Overnight | | | $287.48 | | | | | | | | | $287.48 |
| Good Fortune Group, LLC | | | $0.00 | | | | | | | | | $0.00 |
| GPHB, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Graeme G. Carr | | | $0.00 | | | | | | | | | $0.00 |
| Granroute, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Grant Sterling Bullen | | | $0.00 | | | | | | | | | $0.00 |
| Greater Antelope Valley MLS | | | $0.00 | | | | | | | | | $0.00 |
| Gregory G Zimmerman | | | $0.00 | | | | | | | | | $0.00 |
| Gregory John Maradei | | | $0.00 | | | | | | | | | $0.00 |
| Guy Enriquez | | | $0.00 | | | | | | | | | $0.00 |
| Hartford Fire Insurance Company | | | $42,868.50 | D | 4 | 5/12/20 | | | $34,106.50 | | | $34,106.50 |
| Heather Cabral | $0.00 | | $0.00 | | | | | | | | | $0.00 |
| Heena Kwon | | | $0.00 | | | | | | | | | $0.00 |
| Helen Shaw | | $0.00 | $0.00 | | | | | | | | | $0.00 |
| Helga Weinbach | | | $0.00 | | | | | | | | | $0.00 |
| Henry Franklin Crane, Jr. | | | $0.00 | | | | | | | | | $0.00 |
| High Desert Association of Realtors | | | $0.00 | | | | | | | | | $0.00 |
| Hot Spot Properties, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| HP Inc. | | | $718.43 | | | | | | | | | $718.43 |
| Humana Insurance Co | $0.00 | | $0.00 | | | | | | | | | $0.00 |
| Ikon Financial Svcs | $0.00 | | | | | | | | | $0.00 | | |
| Imperial Irrigation District | | | $273.39 | | | | | | | | | $273.39 |
| Infogroup City Directories | | $0.00 | $0.00 | | | | | | | | | $0.00 |
| Internal Revenue Service | | $0.00 | $0.00 | | 2 | 2/20/20 | | $5,733.09 | | | $5,733.09 | |
| IPFS Corporation of California | | | $0.00 | | | | | | | | | $0.00 |
| Irene Aguilera | | $0.00 | $597.56 | | | | | | | | | $597.56 |
| Iron Mountain Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Irwin D Archer | | | $0.00 | | | | | | | | | $0.00 |
| Irwin S. Hyman dba Hyman | | | $0.00 | | | | | | | $0.00 | | |
| J.C. Casillas | | $0.00 | | | | | | | | | $0.00 | |
| Jace Foss | | $0.00 | | | | | | | | | $0.00 | |
| Jackie Stephens | | $0.00 | | | | | | | | | $0.00 | |
| JACLU INC | | | $0.00 | | | | | | | | | $0.00 |
| James D. Houghton | | | $0.00 | | | | | | | | | $0.00 |
| James Advisory, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Jared Major Hines | | | $0.00 | | | | | | | | | $0.00 |
| JCHU Real Estate, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Jeanene Stolrow | | | $0.00 | | | | | | | | | $0.00 |
| Jeff Linklater | | | $0.00 | | | | | | | | | $0.00 |
| Jeffrey W. Simonds, Inc. | | $13,650.00 | | | | | | | | | $13,650.00 | |
| Jerry N. Gillman | | | $3,284.69 | | | | | | | | | $3,284.69 |
| Jesse Paster | | | $0.00 | | | | | | | | | $0.00 |
| Jessica Hernandez | | $0.00 | | | | | | | | | | $0.00 |

| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jessica Lamb | | | | | | | | | | | | |
| Jillian Olivas | | | | | | | | | | | | |
| Jody San Gabriel | | $0.00 | | | | | | | | | | $0.00 |
| Joel Angel Gamez | | $0.00 | | | | | | | | | | $0.00 |
| John K. Alstrom | | | $0.00 | | | | | | | | | $0.00 |
| John T. Martin | | | $0.00 | | | | | | | | | $0.00 |
| John Z Cserkuti | | | $0.00 | | | | | | | | | $0.00 |
| Jones Lang LaSalle Brokerage | | | $0.00 | | | | | | | | | $0.00 |
| Joseph Faulkner | | $342.48 | | | | | | | | | $342.48 | |
| Joseph Gabbaian | | | $0.00 | | | | | | | | | $0.00 |
| Joseph R. Sanchez | | $0.00 | | | | | | | | | | $0.00 |
| Katherine Tattersfield | | | $0.00 | | | | | | | | | $0.00 |
| Kathleen Howard | | $755.36 | | | | | | | | | $755.36 | |
| Kay Sasatomi | | | $0.00 | | | | | | | | | $0.00 |
| Kay US Wholesalers | | | $0.00 | | | | | | | | | $0.00 |
| Kazuo Enrique Gil | | | $0.00 | | | | | | | | | $0.00 |
| Keith Sherman | | | $0.00 | | | | | | | | | $0.00 |
| Keller Williams Realty | | | $0.00 | | | | | | | | | $0.00 |
| Keller Williams VIP | | | $2,753.68 | | | | | | | | | $2,753.68 |
| Kenfield E. Kennedy | | | $0.00 | | | | | | | | | $0.00 |
| Kenneth Ward | | | $0.00 | | | | | | | | | $0.00 |
| Kevin H Kawaoka | | | $0.00 | | | | | | | | | $0.00 |
| KGL Real Estate | | | $0.00 | | | | | | | | | $0.00 |
| Kinte Robinson | | | $0.00 | | | | | | | | | $0.00 |
| Kirby Greenlee | | | $0.00 | | | | | | | | | $0.00 |
| Knowlton Commercial Real Estate | | | $0.00 | | | | | | | | | $0.00 |
| Latrice Robertson | | $0.00 | | | | | | | | | $0.00 | |
| Laurence Saper | | | $0.00 | | | | | | | | | $0.00 |
| Lee & Associates | | | $0.00 | | | | | | | | | $0.00 |
| Lee & Associates LA/ North | | | $0.00 | | | | | | | | | $0.00 |
| Leon Trigonis | | | $0.00 | | | | | | | | | $0.00 |
| Liberty Mutual Insurance | | | $0.00 | | | | | | | | | $0.00 |
| Linda Rosen | | $0.00 | | | | | | | | | $0.00 | |
| Linzer Law Group, P.C. | | | $142,790.96 | | | | | | | | | $142,790.96 |
| Liron Eli Kotel | | | $0.00 | | | | | | | | | $0.00 |
| Littler Mendelson PC | | | $34,681.15 | | 6 | 4/21/20 | | | $34,681.15 | | | $34,681.15 |
| Live Art Plantscapes Inc. | | | $514.40 | | | | | | | | | $514.40 |
| Liviu Paul Fisher | | | $0.00 | | | | | | | | | $0.00 |
| LoopNet, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Los Angeles County Tax Collector | | $0.00 | | | | | | | | | $0.00 | |
| Louis Burgueno | | $0.00 | | | | | | | | | $0.00 | |
| Lucy M. Hartford | | | | | | | | | | | | |
| Lynn Coker | | | $0.00 | | | | | | | | | $0.00 |
| M.B.Moss, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Madeline Foss | $0.00 | | | | | | | | | $0.00 | | |
| MailChimp | | | $0.00 | | | | | | | | | $0.00 |
| MailFinance – Equip Finance | | | $2,974.79 | | | | | | | | | $2,974.79 |
| Mario Robertson | | | $0.00 | | | | | | | | | $0.00 |
| Marcelle M. Williams & Ass, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Marcos Xavier Villagomez | | | $0.00 | | | | | | | | | $0.00 |
| Marcus & Millichap Real Estate | | | $1,533.26 | | | | | | | | | $1,533.26 |
| Marie Taylor | | | $0.00 | | | | | | | | | $0.00 |
| Marko Beaver | | | $0.00 | | | | | | | | | $0.00 |
| Marko Gandara | | | $0.00 | | | | | | | | | $0.00 |
| Mario J. Alvarez Jr. dba NNN Capital, LL | | | $0.00 | | | | | | | | | $0.00 |

| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mary L. Shelton | | | $0.00 | | | | | | | | | $0.00 |
| Marwa Abdel Salam Elhawary | | | $0.00 | | | | | | | | | $0.00 |
| Mary J. Chavarin | | | | | | | | | | | | $0.00 |
| Mary E. Rouddoux | | $0.00 | $0.00 | | | | | | | | $0.00 | $0.00 |
| Maryam Memon | | | $0.00 | | | | | | | | | $0.00 |
| Massimo Group | | | $0.00 | | | | | | | | | $0.00 |
| Matt Ehrlich | | | $0.00 | | | | | | | | | $0.00 |
| Matthew B. Hijazin | | | $0.00 | | | | | | | | | $0.00 |
| McCarrigle, Kenney & Zampiello, APC | | $8,964.78 | $22,685.48 | | | | | | | | $8,964.78 | $22,685.48 |
| Mehdi Mostaedi | | | | | | | | | | | | |
| Mehran Forooghi | | | $0.00 | | | | | | | | | $0.00 |
| MGR Property Management - Ontario Rent | | | $0.00 | | | | | | | | | $0.00 |
| Michael A. Lanzarotta | | | $0.00 | | | | | | | | | $0.00 |
| Michael A. Zugsmith | | | $1,888,661.11 | C | | | | | | | | $1,888,661.11 |
| Michael Jeffrey Jacobs | | | $0.00 | | | | | | | | | $0.00 |
| Michael Ogbodo | | | $0.00 | | | | | | | | | $0.00 |
| Michael's Family Enterprises, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Michelle Boyer | | $0.00 | $0.00 | | | | | | | | $0.00 | $0.00 |
| Mimecast North America, Inc. | | | $1,262.49 | | | | | | | | | $1,262.49 |
| MK Heating & Air Conditioning, Inc. | | | $425.00 | | | | | | | | | $425.00 |
| Monique Berry | | | $0.00 | | | | | | | | | $0.00 |
| Montana Realty Company | | $0.00 | $0.00 | | | | | | | | $0.00 | $0.00 |
| Mopro | | | $0.00 | | | | | | | | | $0.00 |
| Muller-ING-Gateway, LLC | | | $0.00 | | | | | | | | | $0.00 |
| Nadia Maiwandi | | | $0.00 | | | | | | | | | $0.00 |
| NAI Capital Management, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| NAI Puget Sound Properties | | | $0.00 | | | | | | | | | $0.00 |
| Nancy Pontolesi | | | $0.00 | | | | | | | | | $0.00 |
| Navajo Holdings Inc., A CA Corp | | | $45.74 | | | | | | | | | $45.74 |
| NC Real Estate Company, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Neopost USA | | | $810.97 | | | | | | | | | $810.97 |
| Nestle Waters North America dba ReadyRef | | | $5,025.93 | | | | | | | | | $5,025.93 |
| New America Network, Inc. | | | $16.63 | | | | | | | | | $16.63 |
| Newtek Technology Solutions | | | | | | | | | | | | |
| Nicole Roche | | $0.00 | $0.00 | | | | | | | | $0.00 | $0.00 |
| Nova Homes, Inc. | | | $2,850.00 | | | | | | | | | $2,850.00 |
| Nova Pacific | | | $0.00 | | | | | | | | | $0.00 |
| Oak Development 51, LLC | | | $0.00 | | | | | | | | | $0.00 |
| Office Solutions | | | $1,999.58 | | | | | | | | | $1,999.58 |
| Ogletree Deakins Nash Smoak & Stewart PC | | | $67,285.84 | | 5 | 3/27/20 | | | $92,486.17 | | | $92,486.17 |
| Ohio Equities LLC Realtors | | | $0.00 | | | | | | | | | $0.00 |
| On Target | | | $1,063.15 | | | | | | | | | $1,063.15 |
| Osulivan Business Enterprises Inc | | | $0.00 | | | | | | | | | $0.00 |
| Paragon Business Center | | | $0.00 | | | | | | | | | $0.00 |
| Patrick Ortiz | | | $0.00 | | | | | | | | | $0.00 |
| Patio, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Patsy J. Norris | | | $0.00 | | | | | | | | | $0.00 |
| Paul Kirkjian | | | $0.00 | | | | | | | | | $0.00 |
| Peter Lund | | | $0.00 | | | | | | | | | $0.00 |
| Peter Scott Cameron | | | $0.00 | | | | | | | | | $0.00 |
| Philip Price | | | $0.00 | | | | | | | | | $0.00 |
| Pierre DeLorenzo | | | $0.00 | | | | | | | | | $0.00 |
| Pitney Bowes Inc | | | $46.67 | | | | | | | | | $46.67 |
| Premier Business Centers | | | $0.00 | | | | | | | | | $0.00 |
| ProGraphics LLC | | | $998.87 | | | | | | | | | $998.87 |

| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R & S Consulting | | | $0.00 | | | | | | | | | $0.00 |
| Rachel Howitt | | | $1,888,661.11 | C | | | | | | | | $1,888,661.11 |
| Rackspace Hosting | | | $0.00 | | | | | | | | | $0.00 |
| Ramiro Prado | | | $0.00 | | | | | | | | | $0.00 |
| Randy Matusoff | | | $0.00 | | | | | | | | | $0.00 |
| Randy Steinbeln | | | $0.00 | | | | | | | | | $0.00 |
| RCI Ontario Equities LLC | | | $0.00 | | | | | | | | | $0.00 |
| ReadyRefresh by Nestle | | | $0.00 | | | | | | | | | $0.00 |
| Redhill Ridge Commercial Properties, Inc | | | $0.00 | | | | | | | | | $0.00 |
| Retail Lease Trac, Inc. - Subscription | | | $0.00 | | | | | | | | | $0.00 |
| Richard Bennett | | | $0.00 | | | | | | | | | $0.00 |
| Rick Gold | | | $368.84 | | | | | | | | | $368.84 |
| Ricoh USA, Inc | | | $75,153.00 | | | | | | | | | $75,153.00 |
| Robert Bush | | | $0.00 | | | | | | | | | $0.00 |
| Robert G Stover | | | $0.00 | | | | | | | | | $0.00 |
| Robert M Davis, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Robert Scullin | | | $1,888,661.11 | C | | | | | | | | $1,888,661.11 |
| Rodriguez Real Estate Investment Svc | | | $0.00 | | | | | | | | | $0.00 |
| Runyen, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Ryan Campbell | | | $0.00 | | | | | | | | | $0.00 |
| SA Heri, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Salesgenie.com | | | $0.00 | | | | | | | | | $0.00 |
| Sam Kangavari, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Sam Momenpour | | | $0.00 | | | | | | | | | $0.00 |
| Samantha Diaz | | $0.00 | | | | | | | | | $0.00 | |
| Samantha S Zoleta | | | $495.00 | | | | | | | | | $495.00 |
| Sandra Lopez | | | $0.00 | | | | | | | | | $0.00 |
| Scott Crane | | | $0.00 | | | | | | | | | $0.00 |
| Scott J Wilcott | | | $0.00 | | | | | | | | | $0.00 |
| Scott Tracy Taft | | | $0.00 | | | | | | | | | $0.00 |
| SD Properties, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Sea Point Consulting | | | $0.00 | | | | | | | | | $0.00 |
| Sean R. Sansone | | | $0.00 | | | | | | | | | $0.00 |
| SendGrid | | | $0.00 | | | | | | | | | $0.00 |
| Shafron & Kammer, LLP | | | $0.00 | | | | | | | | | $0.00 |
| Shea Commercial Real Estate Svc, Inc | | | $0.00 | | | | | | | | | $0.00 |
| Sheri McCanless | | | $0.00 | | | | | | | | | $0.00 |
| Sheri Mossedian | | | $0.00 | | | | | | | | | $0.00 |
| Shreeraj Parikh | | | $0.00 | | | | | | | | | $0.00 |
| Silver Commercial, Inc | | | $339.94 | | | | | | | | | $339.94 |
| Stone Titali Fua | | | $0.00 | | | | | | | | | $0.00 |
| Smith Guide, Inc | | | $0.00 | | | | | | | | | $0.00 |
| South Bay Association of Realtors | | | $0.00 | | | | | | | | | $0.00 |
| Spectrum Business | | | $0.00 | | | | | | | | | $0.00 |
| Spectrum Commercial Real Est., Inc | | | $0.00 | | | | | | | | | $0.00 |
| Sproul Social, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Squarespace | | | $0.00 | | | | | | | | | $0.00 |
| Stacey McKinney | | $0.00 | | | | | | | | | $0.00 | |
| State Board of Equalization | | $0.00 | | | | | | | | | $0.00 | |
| Stephanie Villalobos | | $0.00 | | | | | | | | | $0.00 | |
| Stephen Lim | | | $0.00 | | | | | | | | | $0.00 |
| Steve Dohngik Gim | | | $0.00 | | | | | | | | | $0.00 |
| Steve Fireshour | | | $0.00 | | | | | | | | | $0.00 |
| Steven G Ehrich | | | $0.00 | | | | | | | | | $0.00 |
| Steven J Hogberg | | | $0.00 | | | | | | | | | $0.00 |

SCHEDULED CLAIM — FILED CLAIM — ESTIMATED CLAIMS

| Creditor | SCHEDULED CLAIM | | | | FILED CLAIM | | | | | ESTIMATED CLAIMS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
| Steven Samuel Geols | | | $0.00 | | | | | | | | | $0.00 |
| Sun Valley Equities, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Susan Martin | | $0.00 | | | | | | | | | | $0.00 |
| Tahoe Naor Graves | | | | | | | | | | | | $0.00 |
| Talaverd Investments, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Tami Carpenter | | $0.00 | | | | | | | | | | $0.00 |
| Tamika Kennedy | | $0.00 | | | | | | | | | | $0.00 |
| Tang & Associates, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Team Kuehn Realty Group | | | $0.00 | | | | | | | | | $0.00 |
| Tepper & Takvoryan | | | $343,154.45 | D | | | | | | | | $343,154.45 |
| The Childs Group, Inc. | | | $87,543.83 | 7 | 5/1/20 | | | | $71,208.97 | | | $71,208.97 |
| The Enclave - East - Southbay Rent | | | $0.00 | | | | | | | | | $0.00 |
| The Real Deal | | | $125.00 | | | | | | | | | $125.00 |
| The Sheridan Group | | | $33,258.32 | | | | | | | | | $33,258.32 |
| The Smith Guide, Inc. | | | $515.00 | | | | | | | | | $515.00 |
| Thomas D. Petraroca | | | $0.00 | | | | | | | | | $0.00 |
| Thomas Shaun Oliver | | | $0.00 | | | | | | | | | $0.00 |
| Timothy Steuernol | | | $0.00 | | | | | | | | | $0.00 |
| Tina LaMonica Real Estate Svc, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Todd A. Lorber | | | $0.00 | | | | | | | | | $0.00 |
| Todd Anthony Hughes | | | $0.00 | | | | | | | | | $0.00 |
| Tom Oliver | | | $0.00 | | | | | | | | | $0.00 |
| Tommy Lam | | | $0.00 | | | | | | | | | $0.00 |
| Total Funds by Hasler | | | $0.00 | | | | | | | | | $0.00 |
| TPX Communications | | | $0.00 | | | | | | | | | $0.00 |
| Tracey Desco | | $0.00 | | | | | | | | | | $0.00 |
| TransUnion | | | $0.00 | | | | | | | | | $0.00 |
| Tristan M. Greenleaf | | | $0.00 | | | | | | | | | $0.00 |
| U.S. BANK EQUIPMENT FINANCE, | $0.00 | | | | | | $0.00 | | | $0.00 | | $0.00 |
| U.S. Postal Service | | | $653.75 | | | | | | | | | $653.75 |
| Valencia Capital Realty, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Vanessa Navarro | | $0.00 | | | | | | | | | $0.00 | |
| VenDX Realty Inc. | | | | | | | | | | | | $0.00 |
| Ventura-Gavidia, LLC | | | $84,000.00 | D | | | | | | | | $84,000.00 |
| Veronica A. Krayzman | | | $87,767.12 | | | | | | | | | $87,767.12 |
| Vesuvio Partners, Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Vicki R. Dokkin | | | $0.00 | | | | | | | | | $0.00 |
| VND Consulting Inc. | | | $0.00 | | | | | | | | | $0.00 |
| Wayne L. Williamson | | | $0.00 | | 3/19/20 (withdrawn) | | | | $0.00 | | | $0.00 |
| Wells Fargo Vendor Financial Services | | | $0.00 | 1 | | | | | | | | $0.00 |
| Ziyi Wang | | | $0.00 | | | | | | | | | $0.00 |
| ZZy ZZx, Inc. | | | $83,419.96 | | | | | | | | | $83,419.96 |
| **TOTALS** | **$0.00** | **$64,067.51** | **$7,168,952.80** | | | | **$0.00** | **$19,383.09** | **$241,063.87** | **$0.00** | **$83,450.60** | **$7,147,459.48** |

Exhibit "3"

Schedule of Assumed Contracts and Leases

| Counter-Party | Address1 | Address2 | City | State | Zip | Description | Cure Amount | Pecuniary Loss Amount |
|---|---|---|---|---|---|---|---|---|
| 601 Figueroa, CO, LLC | 601 S. Figueroa Street | Suite 1450 | Los Angeles | CA | 90017-0000 | Lease of real property located at 601 S. Figueroa, Ste. 3825, Los Angeles, CA 90017 | TBD | TBD |
| Adobe Creative Cloud | 345 Park Avenue | | San Jose | CA | 95110-0000 | Hosted Software | TBD | TBD |
| Amazon Web Service | 410 Terry Ave North | | Seattle | WA | 98108-0000 | Cloud Software Flatform | TBD | TBD |
| Broadway Michelson, LLC | Dept LA 24530 | | Pasadena | CA | 91185-0000 | Lease of real property located at 1920 Main Street, Suite 100, Irvine, CA 92614 | TBD | TBD |
| Buildout | 222 S Riverside Plaza | Suite 810 | Chicago | IL | 60606-0000 | Marketing and Advertising | TBD | TBD |
| Canon Solution America | 300 Commerce Square Blvd | | Burlington | NJ | 08016-0000 | Copier | TBD | TBD |
| CDW | 200 N. Milwaukee Ave. | | Vernon Hills | IL | 60061-0000 | Hosted Software / Microsoft 365 | TBD | TBD |
| CVH – S Lake Avenue LP, At: Morgan | c/o Coretrust Capital Partners, LLC | 444 South Flower Street, Ste. 600 | Los Angeles | CA | 90071-0000 | Lease of real property located at 225 South Lake Avenue, Suite 1170, Pasadena, CA 91101 | TBD | TBD |
| Digital Map | 5201 California Avenue | Suite 200 | Irvine | CA | 92617-0000 | Web Application Subscription | TBD | TBD |
| Douglas Emmett 2014, LLC | 11845 Olympic Blvd, Suite 700 | | Los Angeles | CA | 90064-0000 | Lease of real property located at 11835 W. Olympic Blvd, Suite 700E, Los Angeles, CA 90064 | TBD | TBD |
| Douglas Emmett 2014, LLC | 15821 Ventura Blvd. | Suite 150 | Encino | CA | 91436-0000 | Lease of real property located at 15821 Ventura Blvd, Suite 320 Encino, CA 91436 | TBD | TBD |
| ESRI | 380 New York Street | | Redlands | CA | 92373-0000 | ArcGis Online Service | TBD | TBD |
| Gateway Towers, LLC | PO Box 515727 | | Los Angeles | CA | 90051-0000 | Lease of real property located at 970 W. 190th Street, Suite 100, Torrance, CA 90502. | TBD | TBD |
| Infogroup City Directories | 13155 Noel Rd, Galleria Tower Three | Suite 1750 | Dallas | TX | 75240-0000 | Sales Leads Database / Online Service | TBD | TBD |
| IPFS Corporation Of California | P.O Box 412086 | | Kansas City | MO | 64141-0000 | Insurance Errors & Omissions | TBD | TBD |
| Iron Mountain | P.O Box 601002 | | pasadena | CA | 91189-0000 | Offsite Storage | TBD | TBD |
| Liberty Mutual | P.O Box 91013 | | Chicago | IL | 60680-0000 | Business Auto Insurance | TBD | TBD |
| Mail Finance | P.O Box 30193 | | Chicago | IL | 30630-0000 | Postage Machine - N15072331 | TBD | TBD |
| Mail Finance | P.O Box 30193 | | Tampa | FL | 33630-0000 | Postage Machine - N15072332 | TBD | TBD |

| Name | Address | Unit | City | State | Zip | Description | | |
|---|---|---|---|---|---|---|---|---|
| Mail Finance | P.O Box 30193 | | Tampa | FL | 33630-0000 | Postage Machine - N15072335 | TBD | TBD |
| Mail Finance | P.O Box 30193 | | Tampa | FL | 33630-0000 | Postage Machine - N15072337 | TBD | TBD |
| Mail Finance | P.O Box 30193 | | Tampa | FL | 33630-0000 | Postage Machine - N16013163 | TBD | TBD |
| Mehdi Mostaedi | 13911 Park Avenue | Suite 206 | Victorville | CA | 92392-0000 | Sublease of real property located at 13911 Park Avenue, Suite 206, Victorville, CA 92392 | TBD | TBD |
| MGR Property Management | 3800 E. Concours | Suite 100 | | CA | 91476-4000 | Lease of real property located at 800 North Haven Ave., Suite 400, Ontario, CA 91764 | TBD | TBD |
| Mimecast | 191 Spring Street | | Lexington | MA | 02421-0000 | Email Management / Computer Online Service | TBD | TBD |
| Muller-ING-Gateway, LLC | PO Box 512219-28 | | Los Angeles | CA | 90051-0000 | Lease of real property located at 21660 E. Copley Drive., Suite 320, Diamond Bar, CA 91765 | TBD | TBD |
| Nestle Waters North America | dba Ready Re | P.O. Box 856158 | Louisville | KY | 40285-0000 | Coffee and Water Machines | TBD | TBD |
| New America Network, Inc | P.O Box 786697 | | Philadelphia | PA | 19178-0000 | License fee and Marketing Assessments | TBD | TBD |
| Paragon Business Center | 25060 Avenue Stanford | Suite 230 | Valencia | CA | 91355-0000 | Lease of real property located at 25060 Avenue Stanford, Suite 165, Valencia, CA 91355 | TBD | TBD |
| Pitney Bowes | P.O Box 371896 | | Pittsburg | PA | 15250-0000 | Postage Machine | TBD | TBD |
| Premier Business Centers | 2102 Business Center Drive | | Irvine | CA | 92612-0000 | Lease of real property located at 41593 Winchester Rd., Suite 240, Temecula, CA 92590 | TBD | TBD |
| Rackspace | P.O Box 731214 | | Dallas | TX | 75373-0000 | Domain Registration | TBD | TBD |
| Salesgenie | 13155 Noel Rd, Galleria Tower Three | Suite 1750 | Dallas | TX | 75240-0000 | Sales Leads Database / Online Service | TBD | TBD |
| SendGrid | 1801 California Street | Suite 500 | Denver | CO | 80202-0000 | Email Deliverance Service | TBD | TBD |
| SG&H Partners, LP | 3150 E. La Palma Ave | Suite A | Anaheim | CA | 92806-0000 | Lease of real property located at 75-410 Gerald Ford Drive, Suite 200, Palm Desert, CA 92211 | TBD | TBD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| SRI Ten 707 Wilshire LLC | 707 Wilshire Blvd | Los Angeles | CA | 90017-0000 | Lease of real property located at 707 Wilshire Blvd, Suite 5125, Los Angeles, CA 90017 Commercial Real Estate | TBD | TBD |
| Trans Union | P.O Box 209047 | Dallas | TX | 75320-0000 | Research Product | TBD | TBD |
| VenOx Realty, Inc. | 300 Esplanade Drive | Oxnard | CA | 93036-0000 | Joint Venture Agreement | TBD | TBD |

Exhibit "4"

Form of Merger Partner Promissory Note

## [TO BE SUPPLIED]

Exhibit "5"

Form of Liquidating Trust Agreement

## **TRUST AGREEMENT**

  This Trust Agreement (the "Agreement"), dated as of August __, 2020, is entered into by and among NAI Capital, Inc. (the "Debtor"), as settlor, and David K. Gottlieb, as the trustee of the Trust referred to herein (the "Trustee"), and is executed in connection with and pursuant to the terms of the Debtor's Plan of Reorganization Dated _____, 2020 (the "Plan") that was proposed by the Debtor and filed with the Bankruptcy Court as Docket Number ___, and confirmed by the Plan confirmation order entered by the Bankruptcy Court on _____, 2020 as Docket Number ___ (the "Confirmation Order"), which provides for, among other things, the establishment of a trust evidenced hereby (the "Trust").

## **W I T N E S S E T H**

  WHEREAS, on January 31, 2020, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court, Central District of California, San Fernando Valley Division (the "Bankruptcy Court");

  WHEREAS, on _____, 2020, the Bankruptcy Court entered the Confirmation Order confirming the Plan.  All references herein to the "Plan" mean the Plan as modified by the Confirmation Order;

  WHEREAS, the Trust is created pursuant to the Plan;

  WHEREAS, the Trust is created on behalf, and for the sole benefit, of the creditors of the Debtor (the "Trust Beneficiaries"), as set forth in the Plan and provided herein;

  WHEREAS, the Trust is established and maintained for the purpose of collecting, distributing and liquidating all of the funds and property assigned to the Trust and pursuing claims and causes of action assigned to the Trust under the Plan (the "Trust Corpus") for the benefit of the Trust Beneficiaries in accordance with the terms of this Agreement and the Plan;

  WHEREAS, the Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business;

  WHEREAS, the Plan provides that the Trust Beneficiaries are entitled to their applicable share of the Trust Corpus, all as described generally in the Plan;

  WHEREAS, concurrently with the effectiveness of this Agreement, the Effective Date under the Plan has occurred, the Plan has become effective, and the Debtor has been conclusively deemed to have irrevocably transferred, absolutely assigned, conveyed, set over and delivered all right, title and interest of the Debtor and the Debtor's bankruptcy estate in property and assets of any kind (the "Trust Property") to the Trust (except as specifically set forth in the Plan);

  WHEREAS, pursuant to the Plan, the Debtor, the Trustee, and the Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Property to the Trust as a transfer of the Trust Property by the Debtor to the Trust Beneficiaries in satisfaction of their claims under the Plan, followed by a transfer of the Trust Property by the Trust

Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Trust Beneficiaries as the grantors and owners of the Trust for federal income tax purposes;

WHEREAS, the Trust is intended to qualify as a liquidating trust for federal income tax purposes pursuant to Treasury Regulation Section 301.7701-4(d), and to be treated as a grantor trust for federal income tax purposes pursuant to Sections 671 through 679 of the Internal Revenue Code;

WHEREAS, pursuant to the Plan and the Confirmation Order, the Bankruptcy Court has approved David K. Gottlieb to serve as the Trustee of the Trust and be compensated in accordance with the terms of the Plan, and the Bankruptcy Court has approved _____ as the Trust Board Members and be compensated in accordance with the terms of the Plan;

WHEREAS, the Bankruptcy Court shall have jurisdiction over the Trust, the Trustee, and the Trust Property, including, without limitation, any claims and causes of action, as provided herein and in the Plan; and

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtor and the Trustee hereby agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1     Definitions.

1.1.1     "Agreement" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.2     "Bankruptcy Court" shall have the meaning set forth above.

1.1.3     "Debtor" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.4     "Effective Date" shall have the meaning set forth in the Plan and the Confirmation Order.

1.1.5     "Plan" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.6     "Trust" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.7     "Trustee" shall mean David K. Gottlieb and any successor or replacement duly appointed under the terms of this Agreement.

2

1.1.8    "Trust Beneficiaries" shall have the meaning set forth in the Recitals to this Agreement, or any successors to such Trust Beneficiaries pursuant to Section 7.6 of this Agreement.

1.1.9    "Trust Board Members" shall mean _____ and any successors or replacements.

1.1.10    "Trust Property" shall mean the Trust Corpus (as defined in the Recitals to this Agreement) and shall include all of the assets assigned to the Trust under the Plan.

1.2    <u>Use of Plan Definitions</u>.  All capitalized terms which are used in this Agreement and not otherwise defined herein shall have the same meaning set forth in the Plan and the Confirmation Order.  In the case of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control.  In the case of any inconsistency between the terms of the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

1.3    <u>Certain References</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to such section or article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement.

## ARTICLE II
## ESTABLISHMENT, PURPOSE AND FUNDING OF TRUST

2.1    <u>Creation and Name</u>.  There is hereby created the Trust, referred to in the Plan as the Liquidating Trust.  The Trustee may conduct the affairs of the Trust under the name of the "<u>NAI Trust</u>."

2.2    <u>Purpose of the Trust</u>.  The Debtor and the Trustee, pursuant to the Plan and in accordance with Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), hereby create the Trust for the purpose of (i) collecting, distributing, liquidating and otherwise disposing of all of the funds and property in the Trust for the benefit of the Trust Beneficiaries in accordance with the terms of this Agreement and the Plan, (ii) causing all proceeds of Trust Property to be deposited into the Trust in accordance with the Plan and this Agreement, (iii) controlling, defending, prosecuting settling, and/or pursuing the resolution or litigation of all claims, rights, claims and causes of action included in the Trust Property, in each such case, in accordance with the Plan and this Agreement, (iv) overseeing and, where appropriate, directly initiating actions to resolve any remaining issues regarding the allowance and payment of disputed claims or any other claims that require resolution, including, as necessary, initiation and/or participation in proceedings before the Bankruptcy Court, and (v) taking such actions permitted hereunder that are necessary or useful to maximize the value of the Trust including, without limitation, the borrowing of funds and the retention of employees.  The activities of the Trust shall be limited to those activities set forth herein and as otherwise contemplated by the Plan.  The Trustee understands and agrees that the Trust has no objective to continue or engage in the conduct of any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

    2.2    <u>Transfer of Trust Property</u>.

    (i)    The Debtor hereby irrevocably grants, releases, assigns, conveys, transfers and delivers, for the benefit of the Trust Beneficiaries, pursuant to Sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and the Confirmation Order, the Trust Property to the Trust for the uses and purposes as specified in this Agreement and the Plan, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Section 1141(c) of the Bankruptcy Code, except as set forth in the Confirmation Order or the Plan. To the extent that certain assets of the Debtor's or the Debtor's bankruptcy estate (and their right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Trust on the Effective Date, such assets shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practical after the Effective Date.  The Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Trustee title to and possession of the Trust Property.

    2.2.2    Except as expressly provided herein or as provided in the Confirmation Order, in no event shall any part of the Trust Property revert to or be distributed to the Debtor.

    2.2.3    For all federal, state and local income tax purposes, the Debtor, the Trust Beneficiaries, and the Trustee shall treat the transfer of the Trust Property to the Trust as a transfer of the Trust Property by the Debtor to the Trust Beneficiaries in satisfaction of their class 14 and class 15 claims under the Plan, followed by a transfer of the Trust Property by the Trust Beneficiaries to the Trust in exchange for their beneficial interests in the Trust.  Thus, the Trust Beneficiaries shall be treated as the grantors and owners of the Trust.

    2.3    <u>Securities Law</u>.  Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Trust to the Trust Beneficiaries under the Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**ARTICLE III**
**APPOINTMENT, DUTIES, AND POWERS OF THE TRUSTEE**

    3.1    <u>Appointment.</u> David K. Gottlieb hereby acknowledges his acceptance of his appointment as the Trustee to serve pursuant to the terms of the Plan and this Agreement, until such time as he resigns, is removed or discharged, or this Agreement and the Trust terminate as hereinafter set forth.

3.2    <u>Trustee's Duties.</u> The duties, obligations, and responsibilities of the Trustee shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute them to the Trust Beneficiaries; (b) take or not take those actions that the Trustee in his business discretion believes to be in accordance with the best interests of the Trust Beneficiaries and which actions or inactions are consistent with the Plan; and (c) report to and work under the supervision of the Trust Board Members.

The Trustee's responsibilities, duties and obligations are solely to the Trust Beneficiaries. The Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. For purposes of performing his duties and fulfilling his obligations under the Plan, this Agreement, and the Confirmation Order, the Trustee shall be deemed to be a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code and a representative of the Debtor's bankruptcy estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5).

3.3    <u>Trustee's Rights, Powers and Privileges and Limitations Thereto.</u>

The Trustee's rights, powers and privileges and the limitations thereto are set forth below in Sections 4.1 and 4.4, respectively.

**ARTICLE IV**
**ADMINISTRATION OF THE TRUST**

4.1    <u>Rights, Powers and Privileges</u>.  The Trustee shall have all of the rights, powers and privileges expressly provided in this Agreement and the Plan.  The Trustee shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, that the Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

4.1.1    make continuing efforts to collect on, sell, or otherwise liquidate or dispose of Trust Property, and take any of the actions set forth in this Agreement without the approval of the Bankruptcy Court and free of the restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, other than restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement;

4.1.2    file, initiate, analyze, investigate, compromise and settle all causes of action that are Trust Property, including all claims and causes of action, that could be brought by a trustee or debtor-in-possession under the Bankruptcy Code, and prosecute or defend all appeals on behalf of the Debtor, as representative of the Debtor within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code;

4.1.3    commence and/or pursue any and all actions involving Trust Property that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan, including all claims and causes of action;

4.1.4    hold legal title to any and all rights of the Debtor and the Trust Beneficiaries in or arising from the Trust Property;

5

4.1.5    protect and enforce the rights to the Trust Property (including, without limitation, any and all claims and causes of action that are Trust Property) vested in the Trustee by this Agreement and the Plan by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

4.1.6    compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle, in accordance with the terms of this Agreement, claims in favor of or against the Trust, and release and discharge, to the fullest extent permitted by law, non-Debtor parties to claims or causes of action from all claims and causes of action that the Trustee (as successor to the Debtor on behalf of the Trust Beneficiaries) has or may have whether known or unknown against such persons without further notice to, or approval of, the Bankruptcy Court;

4.1.7    exercise any and all powers granted to the Trustee by any agreements or by common law or any statute which serves to increase the extent of the powers granted to the Trustee hereunder;

4.1.8    manage all litigation instituted by or against the Trust or the Trustee, and administer the Trust expenses related thereto;

4.1.9    determine and satisfy any and all liabilities created or incurred by the Trust;

4.1.10    effectuate the wind down and ultimate dissolution of the Debtor as a legal entity;

4.1.11    file, if necessary, any and all tax and information returns with respect to the Trust and pay taxes properly payable by the Trust, if any;

4.1.12    request any appropriate tax determination with respect to the Trust;

4.1.13    in reliance upon the official claims register maintained in the Debtor's chapter 11 case, maintain on the Trustee's books and records a schedule evidencing the beneficial interest herein held by each of the Trust Beneficiaries;

4.1.14    make timely distributions to the Trust Beneficiaries of Trust Property in accordance with this Agreement;

4.1.15    open and maintain bank accounts on behalf of or in the name of the Trust;

4.1.16    make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Trust and file returns for the Trust;

4.1.17    establish such reserves for, among other things, payment of taxes, assessments, Trustee's fees and professional fees and other expenses of administration of the Trust as the Trustee deems to be necessary and appropriate for the proper operation of matters incidental to the Trust;

4.1.18    pay all expenses and make all other payments relating to the Trust Property and the administration of the Trust;

4.1.19    retain and pay third parties pursuant to Section 4.2 hereof;

4.1.20    obtain insurance coverage or a bond with respect to the liabilities and obligations of the Trustee under this Agreement (in the form of an errors and omissions policy or otherwise) and use Trust Property to obtain and maintain the same;

4.1.21    employ and compensate professionals as the Trustee deems necessary and appropriate;

4.1.22    pay post-Effective Date quarterly fees to the U.S. Trustee;

4.1.23    prepare and file post-confirmation quarterly reports with the U.S. Trustee and post-confirmation status reports with the Bankruptcy Court as required;

4.1.24    all powers provided under the Plan to the Trustee;

4.1.25    invest any moneys held as part of the Trust Property in accordance with the terms of Section 4.3 hereof; and

4.1.26    terminate the Trust consistent with the terms of this Agreement and the Plan and not unduly prolong the duration of the Trust.

4.2    <u>Agents and Professionals</u>.  The Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Trustee to have qualifications necessary to assist in the proper administration of the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Trust Property in the ordinary course to the extent permitted herein.

4.3    <u>Investment and Safekeeping of Trust Property</u>.  All monies and other Trust Property received by the Trustee shall, until distributed or paid over as herein provided, be held in the Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other Trust Property, unless and to the extent required by law or the Plan.  The Trustee shall be under no liability for interest or producing income on any moneys received by the Trust and held for distribution or payment to the Trust Beneficiaries, except as such interest shall actually be received by the Trustee.  Investments of any moneys held by the Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the Trust Property and to further the liquidating purpose of the Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

4.4    <u>Limitations on Trustee and Payment of Fees</u>.  The Trustee shall not at any time, on behalf of the Trust or Trust Beneficiaries: (i) enter into or engage in any trade or business, and no part of the Trust Property or the proceeds, revenue or income therefrom shall be used or

7

disposed of by the Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Trust Property.

        4.4.1    The Trustee may invest funds held in the Trust consistent with the requirements of this Agreement and the prudent person standard of care, provided that the Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Trust to the extent such institution is on the list of approved depositories by the United States Trustee.

        4.4.2    The Trustee shall hold, collect, conserve, protect and administer the Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.  Any determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative.

    4.5    <u>Bankruptcy Court Approval of Trustee Actions</u>.  Except as provided in the Plan or otherwise specified in this Agreement, the Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court.  The Trustee shall exercise his business judgment for the benefit of the Trust Beneficiaries in order to maximize the value of the Trust Property and distributions, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Trust Property, the Trust, this Agreement, the Plan, or the Debtor.  The Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Property free and clear of any and all liens, claims and encumbrances.

    4.6    <u>Valuation of Trust Property</u>.  The Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Trust Property.  The valuation shall be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by the Bankruptcy Court.

    4.7    <u>Trust Board</u>.  _____ will serve as the Trust Board Members.  In the event that a Trust Board Member resigns, the remaining Trust Board Member, along with the Trustee, shall jointly select a replacement Trust Board Member, if they deem it advisable and practicable.  The Trust Board Members shall each receive compensation of _____ for serving as a Trust Board Member.

**ARTICLE V**
**DISTRIBUTIONS FROM THE TRUST**

    5.1    <u>Distributions</u>.  The Trustee shall distribute at least quarterly to the Trust Beneficiaries all net cash income plus all net cash proceeds from the liquidation of Trust Property; provided, however, that the Trustee shall maintain at all times adequate cash or marketable securities as reserves, including the Disputed Claim Reserve, as may be reasonably necessary to maintain the value of the Trust Property, satisfy projected expenses and meet claims

8

and contingent liabilities of the Trust.  The Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

5.2    Pro Rata Share of Distributions.  Each of the Trust Beneficiaries shall receive its share or pro rata share (as applicable) of any and all distributions made by the Trustee.  The Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

5.3    Delivery of Distributions.  All distributions to be made to the Trust Beneficiaries shall be made by the Trustee in accordance with the terms of the Plan.

5.4    Undelivered Property. Any Trust Beneficiary that fails to claim any cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and shall not be subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such cash (including interest thereon) shall be made available for re-distribution to all other Trust Beneficiaries. Trust Beneficiaries who fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Trust or the Trustee, as applicable, or any of the other Trust Beneficiaries to whom distributions are made under the Plan, provided, however, that the Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate Trust Beneficiaries whose distributions are returned as undeliverable or whose checks are not timely cashed.

5.5    De Minimis Distributions. No distribution shall be required to be made hereunder to any Trust Beneficiary unless such distribution will amount to at least $25.00. Any Trust Beneficiary on account of which the amount of cash to be distributed pursuant to any distribution from the Trust is less than $25.00 shall be deemed to have no claim for such distribution against the Debtor, the Trust, the Trustee or the Trust Property. Subject to Section 5.4 of this Agreement, any cash not distributed pursuant to this Section 5.5 shall be the property of the Trust free of any restrictions thereon.

5.6    Payments Limited to Trust Property.  All payments to be made by the Trustee to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Trustee has sufficient reserves to make such payments in accordance with this Agreement and the Plan. Each Trust Beneficiary shall have recourse only to the Trust Property for distribution under this Agreement and the Plan.

5.7    Fees and Expenses.

5.7.1    Subject to the limitations set forth herein and in the Plan, the Trustee shall pay and/or reserve for the operating and administrative expenses of the Trust before approving distributions to or for the benefit of the Trust Beneficiaries.

5.7.2    The Trustee shall satisfy any fees and expenses of the Trust with Trust Property.

5.8    Priority of Distributions.  Any recovery by the Trust on account of the Trust Property shall be applied in the following order:

(i)    first, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Trust, including, without limitation, reasonable professional fees and expenses and court costs;

(ii)    second, distributed to the Trust Beneficiaries in accordance with this Agreement and the Plan.

5.9    <u>Compliance with Laws</u>.  Any and all distributions of Trust Property shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE VI
## TRUST BENEFICIARIES

6.1    <u>Identification of the Trust Beneficiaries</u>.  Each of the Trust Beneficiaries shall be recorded and set forth in a schedule (the "<u>Schedule</u>") maintained by the Trustee.  In order to determine the actual names and addresses of the Trust Beneficiaries, the Trustee may either (i) rely upon the Schedule, or (ii) deliver a notice to the Trust Beneficiaries.  Such notice will include a form for each Trust Beneficiary to complete in order to be properly registered as a Trust Beneficiary and be eligible for distributions under the Trust.

6.2    <u>Beneficial Interest Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Trust Beneficiary or the Debtor to any title in or to the Trust Property or to any right to call for a partition or division of such Trust Property or to require an accounting, except as specifically provided herein.

6.3    <u>Ownership of Beneficial Interests Hereunder</u>.  Subject to the requirements and limitations of this Agreement, each Trust Beneficiary shall own a beneficial interest in the Trust equal in proportion to such Trust Beneficiary's pro rata share of its allowed claim in class 14 and class 15 under the Plan.

6.4    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee, including the Schedule.

6.5    <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the Trust and the Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute

Resolution" in this Section 6.5). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Trust to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

6.6    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests in the Trust shall not be assignable, other than by operation of law.

## ARTICLE VII
## THIRD PARTY RIGHTS, LIMITATION OF LIABILITY AND INDEMNITY

7.1    <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents or professionals to act in connection with the Trust Property.  No person or entity dealing with the Trustee shall have any obligation to inquire into the validity, expediency or propriety of any transaction by the Trustee or any agent or professional of the Trustee.

7.2    <u>Trustee's Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise his best judgment to the end that the affairs of the Trust shall be properly managed and the interests of all the Trust Beneficiaries and the Debtor are safeguarded.

7.3    <u>Indemnity</u>. The Trustee, each of the Trustee's respective agents, employees, professionals, attorneys, accountants, advisors and representatives, and all of the Trust Board Members (collectively, the "<u>Indemnified Parties</u>") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party solely in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Indemnified Party. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which it is indemnified.

## ARTICLE VIII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

8.1    <u>Initial Trustee</u>.  The Trustee shall be David K. Gottlieb.

8.2     Term of Service.  The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Trustee in accordance with this Agreement; or (c) the Trustee's death, resignation or removal.

8.3     Removal of the Trustee.  The Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause. The removal shall be effective upon the date specified in such entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Trustee as of such date.  In the event of any such removal, the Trustee shall submit to the Bankruptcy Court and any successor a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Trustee.

8.4     Resignation of the Trustee.  The Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so.  In the event of a resignation, the resigning Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Trustee.  The resignation shall be effective on the later to occur of:  (i) the date specified in the notice; or (ii) the appointment of a successor Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; _provided_, that if a successor Trustee is not appointed or does not accept his/her appointment within ninety (90) days following delivery of notice of resignation, the resigning Trustee may petition the Bankruptcy Court for the appointment of a successor Trustee.

8.5     Appointment of Successor Trustee.  Upon the resignation, death, incapacity, or removal of the Trustee, a successor Trustee shall be appointed pursuant to an order of the Bankruptcy Court.  Any successor Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement and the Plan shall be binding upon and inure to the benefit of the successor Trustee.

8.6     Powers and Duties of Successor Trustee.  A successor Trustee shall have all the rights, privileges, powers, and duties of his/her predecessor under this Agreement and the Plan. Notwithstanding anything to the contrary herein, a removed or resigning Trustee shall, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Trust Agreement all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

8.7     Trust Continuance.  The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.  In the event that a successor Trustee is not appointed within thirty (30) days of when required under this Agreement, any Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Trustee upon notice to the Trustee.

8.8     Compensation and Costs of Administration.  The Trustee shall be compensated in the manner set forth in the Plan and the Plan Confirmation Order.

8.9     Annual Reporting and Filing Requirements.

8.9.1    Until a final decree closing the Debtor's chapter 11 case is entered, the Trustee will file a quarterly status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The report will be available and provided to any Trust Beneficiary upon written request.

8.9.2    The Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations, and shall furnish information statements to the Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Trust and instruct them to report such items on their federal income tax returns. The Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Trustee shall have the right to employ an accountant and any other professionals needed to assist the Trustee for this purpose.

8.9.3    The tax returns filed by the Trustee shall report all Trust earnings for the taxable year being reported.

8.9.4    All of the Trust's income shall be treated as subject to tax on a current basis. For federal income tax purposes, items of income, gain, loss, and deduction of the Trust will be allocated to the Trust Beneficiaries in a manner, to be determined by the Trustee, that is consistent with applicable Treasury Regulations and that reflects the Trust Beneficiaries' respective contributions and their respective interests in the interim and final distributions to be made by the Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

8.10    Confidentiality. The Trustee shall, while serving as Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or following his removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relate or of which he/she has become aware in his capacity as Trustee.

**ARTICLE IX**
**MAINTENANCE OF RECORDS**

9.1    The Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements. Upon 60 days' prior written notice delivered to the Trustee, such books and records shall be open to inspection by any Trust Beneficiary at any reasonable time during normal business hours; *provided* that, if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Trustee. The Trustee shall furnish to any Trust Beneficiary upon written request an annual statement of receipts and disbursements of the Trust. Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5) years after the final report to the Bankruptcy

13

Court has been rendered by the Trustee (unless such records and documents are necessary to fulfill the Trustee's obligations pursuant to this Agreement).

## ARTICLE X
## DURATION OF TRUST

10.1  <u>Duration</u>.  The Trust shall become effective upon the Effective Date of the Plan. Thereupon, this Agreement shall remain and continue in full force and effect until the Trust is terminated in accordance with the provisions of this Agreement and the Plan.

10.2  <u>Termination of the Trust.</u>  The Trust (and the duties, responsibilities and powers of the Trustee) shall terminate on the later of (a) the date which is 5 years after the Effective Date; and (b) the date when full resolution of all Trust Property transferred to the Trust has occurred, including distribution of the Trust Property and the net proceeds thereof, in accordance with the Plan and this Agreement, provided however, that for cause the Trustee may seek earlier termination of the Trust upon application to the Bankruptcy Court.  The Trustee shall not unduly prolong the duration of the Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Trust Property and to effect the distribution of the Trust Property to the Trust Beneficiaries in accordance with the Plan and terminate the Trust as soon as practicable.  Upon such termination, except as set forth in Section 10.3 below, the Trustee shall be discharged from his position as Trustee and from all further duties, obligations and responsibilities under the Plan.

10.3  <u>Continuance of Trust for Winding Up</u>.  After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Trust.  After the termination of the Trust, the Trustee shall retain for a period of five (5) years the books, records, Beneficiary lists, and certificates and other documents and files that have been created by the Trustee.  At the Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after five (5) years from the completion and winding up of the affairs of the Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final distribution of the Trust Property, the Trustee shall have no further duties or obligations hereunder.  The Trustee may pay in advance from the Trust Property all costs of document management.

## ARTICLE XI
## MISCELLANEOUS

11.1  <u>Preservation of Privilege</u>.  In connection with the rights, claims, and causes of action that constitute the Trust Property, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Trust pursuant to the terms of the Plan or otherwise shall vest in the Trustee and his representatives, and the Debtor and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

11.2    <u>Notices</u>.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee, as applicable, shall be in writing and shall be sent by Federal Express and email, or transmitted by hand delivery and email, addressed as follows:

If to the Trustee:

David K. Gottlieb
D. Gottlieb & Associates, LLC
16255 Ventura Blvd., Suite 440
Encino, California, 91436
Email: dgottlieb@dkgallc.com

With a copy to:

David B. Shemano
ShemanoLaw
1801 Century Park East, Suite 1600
Los Angeles, CA  90067
Tel: (310) 492-5033
Email: dshemano@shemanolaw.com

And to:

Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Attn:   Ron Bender
Email: RB@LNBYB.com

11.3    <u>No Bond</u>.  Notwithstanding any state law to the contrary, the Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

11.4    <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

11.5    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6    <u>Headings</u>.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

11.7    <u>No Execution</u>.  All Trust Property shall be deemed *in custodia legis* until such times as the Trust Property has actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Property or the Trust in any manner or compel payment from the Trust except by an order of the Bankruptcy

Court that becomes a final order.  Payment will be solely governed by this Agreement and the Plan.

      11.8   <u>Intention of Parties to Establish Grantor Trust</u>.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

      11.9   <u>Amendment</u>.  This Agreement may be amended at any time by order of the Bankruptcy Court after motion by the Trustee.

      11.10  <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

      11.11  <u>Counterparts and Facsimile Signatures</u>.  This Agreement (or any amendment thereto) may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

      IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

NAI Capital, Inc.


By:_____
Name: Chris Jackson
Title: Executive Managing Director and Authorized Agent


TRUSTEE


By:_____
Name: David K. Gottlieb

Exhibit "6"

Resume of David K. Gottlieb (the Liquidating Trustee)

# David K. Gottlieb, CPA, CFF

## Professional Summary

- D. Gottlieb & Associates, LLC – May 2014 – Present
  Managing Member

- Crowe Horwath, LLP –  December 2008 to April 2014

  Partner in charge of Bankruptcy and Insolvency Services unit.

- Grobstein, Horwath & Company LLP - 1989 to 2008

  Co-partner in charge of bankruptcy and litigation support departments

- BDO Seidman, San Francisco - April 1986 to August 1989

  Specialist in apparel and insolvency areas

- Laventhol & Horwath, San Francisco - October 1984 to April 1986

- Cohen, Graff & Company, San Francisco - December 1982 to October 1984

- Joseph S. Herbert & Company, New York - June 1980 to July 1982

## Experience

- Mr. Gottlieb currently specializes in providing trustee and fiduciary services in bankruptcy and , insolvency related matters.  In the past he provided bankruptcy, insolvency, litigation support and forensic accounting services to a wide variety of clients engaged in professional services, manufacturing, import/export, wholesale and retail sales, healthcare, hospitality, energy, real estate and various other industries

## Professional Affiliations

- Member of Association of Certified Fraud Examiners

- Charter Member of California Receivers Forum

- Past Board Member of Los Angeles Bankruptcy Forum

- Member of the National Association of Bankruptcy Trustees

- Member of the American Bankruptcy Institute

- Member of the American Institute of Certified Public Accountants

- Member of the California Society of CPA's

- Member of Nevada Society of CPA's

- Member of the American College of Forensic Examiners

## Education

- Graduated 1980 with a Bachelor of Science degree in Accounting from New York University.

## Publications and Speaking Engagements

- Commercial Finance Conference - Accounts receivable, fraud and inventory valuation

- BDO Seidman - National instructor, third year staff accountants

- Heller Financial - Seminar on use of financial statements

**Resume** David K. Gottlieb                                                                                        2

- Nations Bank - Seminar on prospective financial statements

- Manufacturers Bank - Seminar on inventory valuation and deferred taxes

- Heller Financial - Seminar on inventory

- Internal Revenue Service - Seminar on investigating illicit transactions

- National Association of Bankruptcy Trustees - Seminar on exemptions

- ABI- Battleground West panel member on post BAPCA healthcare cases

## Certifications and Credentials
- Certified Public Accountant (CPA)

- AICPA Certified Financial Forensics (CFF Credential)

## Bankruptcy and Litigation Support and Operational Experience

- Mr. Gottlieb currently specializes in providing trustee and fiduciary services in bankruptcy and insolvency matters and in the past provided   litigation support and forensic accounting services with emphasis on insolvency cases.  He currently serves as a Chapter 7 Panel Trustee for the Central District of California and as a Chapter 11 Trustee, both positions of which are appointed by the United States Trustee.

- Samples of insolvency and litigation consulting and operational services provided under Mr. Gottlieb's direction include:

| Type of Client | Employment Capacity and Services Rendered |
|---|---|
| Hospital | **Chapter 11 and subsequent Chapter 7 Trustee** Appointed by the United States Trustee to serve as a Chapter 11 Trustee of a 155 bed community hospital. Successful evaluation of operations and wind-down of hospital.  Sale of real property and equipment for approximately $23 million, prosecution of avoidance actions and D&O litigation resulting in recoveries of approximately $5 million. |
| Hospital | **Accountant and Financial Advisor to Chapter 11 Trustee** Evaluation of operations and finances to assist in wind-down and sale of real property and equipment.  Analysis of all tax issues, use of cash collateral issues, solvency analysis, avoidance actions and litigation support for D&O claims. |
| Hospital | **Accountant to the Debtor and Debtor in Possession** Hired to assist with cash management, budget forecasts and analysis of cash collateral.  Assisted with United States Trustee reporting requirements and compliance. Prepared tax returns. |

| Type of Client | Employment Capacity and Services Rendered |
| --- | --- |
| Hospital | **Chapter 7 Trustee**<br>Appointed by the United States Trustee to serve as a Chapter 7 Trustee for a psychiatric hospital treating primarily those with chemical dependencies.  Liquidation of assets, wind down of operations, prosecution of avoidance actions and successful carve out negotiated with secured lender. |
| Hospital | **Plan Administrator**<br>Ensuring all classes of creditors receive payments as outlined in the confirmed Plan of Reorganization.  Negotiate with the Internal Revenue Service regarding past-due payroll taxes, the City of Los Angeles regarding past-due business taxes and Debtor's working capital lender regarding pay down of the working capital loan. |
| California Power Exchange | **Interim Chief Executive Officer**<br>Appointed to Board of Directors and selected as the Interim Chief Executive Officer to operate and eventually liquidate the reorganized debtor which was the primary energy trading exchange created by deregulation.  Responsible for devising and implementing a plan to staff and operate the reorganized debtor upon the effective date of the Bankruptcy Plan (April 1, 2003).  Recommended and implemented the staffing and compensation plans to efficiently and effectively operate the reorganized debtor.  Other responsibilities include reviewing and disbursing all monies, implementation of cash management system, negotiation and structuring investment relationship with money center bank, semi-annual rate case filings with the Federal Energy Regulatory Commission ("FERC"), daily supervision of staff and IT consultants, responsible for oversight and coordination of all legal matters affecting the reorganized debtor, accounting, negotiation of insurance as well as all other business operations. |
| Media Buying Company | **Chapter 7 Trustee**<br>Appointed by the United States Trustee to serve a Chapter 7 Trustee.  Evaluation of operations and finances and wind-down of company.  Case currently in progress. |
| Apparel Manufacturer | **Liquidating Trustee**<br>Selected by Debtor to act as Liquidating Trustee.  Settled claims and litigation.  Negotiated financing agreements Liquidated manufacturer's inventory which resulted in a distribution to unsecured creditors of approximately $0.96. |
| Individual Chapter 11 | **Chapter 11 Trustee**<br>Involuntary Chapter 11 Trustee for High Profile Individual and 9 Affiliated Entites<br>Cross border transfer issues and sophisticated litigation in the 9th Circuit Court of Appeals and the California Supreme Court. |

| Type of Client | Employment Capacity and Services Rendered |
| --- | --- |
| Fulfillment Company | **Chapter 11 and subsequent Chapter 7 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee of a fulfillment company.  Successful evaluation of operations, wind-down of business, sale of assets and prosecution of avoidance actions. |
| Primary Care Medical Services Provider Organization | **Chapter 11 Examiner and subsequent accountant to the Chapter 7 Trustee**<br>Appointed by the United States Trustee to serve as Examiner in connection with an ongoing Chapter 11 Debtor-in-Possession matter.  Issued a detailed report summarizing the conduct of the debtor and the need for appointment of a trustee.<br>Upon conversion of the case was employed by the Chapter 7 Trustee to perform a wide variety of accounting tasks, including scheduling out potential avoidance actions, reconstruction of books and records and preparation of estate tax returns.. |
| Hotel | **Chapter 11 and subsequent Chapter 7 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee which was operated and sold for $15 million. |
| Hotel | **Chapter 11 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee to three residential hotels which Were operated and sold for $9.8 million. |
| Apparel manufacturer | **Chapter 7 Trustee**<br>Appointed by the United States Trustee upon election by creditors to serve as Chapter 7 Trustee in connection with negotiating $1.5 million settlement with secured lender and debtor's stockholders. |
| Nightclub | **Chapter 11 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee in connection with operating nightclub.  Negotiated settlement between landlord, debtor and other interested parties. |
| Real estate developer | **Examiner**<br>Appointed by the United States Trustee to serve as an Examiner in connection with an ongoing Chapter 11 Debtor-in-Possession matter. Issued a detailed report summarizing the conduct of the debtor and the need for appointment of a trustee. |

| Type of Client | Employment Capacity and Services Rendered |
|---|---|
| Importer | **Examiner**<br>Appointed by the United States Trustee to serve as Examiner in connection with an ongoing individual debtor-in-possession matter.  Issued detailed report leading to parties agreeing to settle and confirm plan of reorganization. |
| Entertainment Executive | **Chapter 11 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee in connection with individual Debtor involved as a co-debtor in an appeal of a multimillion dollar judgment.  Trustee safeguarded assets and performed forensic investigation until case was dismissed and settlement reached with all parties. |
| Media Buying Broker | **Chapter 11 and subsequent Ch. 7 Trustee**<br>Appointed by the United States Trustee to serve as Chapter 11 Trustee.  Determined conversion was necessary and was subsequently re-appointed in the capacity of Chapter 7 Trustee. Negotiated compromise of controversy with secured creditor and purchaser. |
| Real estate holding company | **Accountant for Receiver**<br>Assist Trustee and his counsel with plans and related family partnership of reorganization and disclosure statements, including cash flow statements and liquidation analyses.  Assist with insider preference analyses. |
| Multi-affiliate financial services Company | **Accountant for Creditors' Committee**<br>Assist counsel for creditors' committee with fraudulent conveyance and insider preference analysis, asset search, preparation of combined financial statements, expert witness testimony. |
| Publicly held national campground company | **Accountant to Creditors' Committee**<br>Assist counsel for creditors' committee with analysis of plan of reorganization, financial statement preparation and insider activity analysis. |
| Multi-affiliate thoroughbred finance corporation | **Accountant to Creditors and Certain Equity Holders**<br>Assisted certain petitioning creditors in involuntary proceeding with reconstruction of claims, solvency analysis. Expert witness testimony. |
| Credit Union Service Organization (Mortgage Banker owned by Credit Unions) | **Accountant to Debtor**<br>Assisted company in reconstruction of records and liquidation of assets.  Expert transactional witness in major litigation against national accounting firm. |

| Type of Client | Employment Capacity and Services Rendered |
|---|---|
| Distributor of Goods to Gas Stations and Convenience Stores | **Examiner** <br> Appointed by the United States Trustee to serve as Examiner to investigate business operations of Chapter 11 wholesaler and the potential improper transfer of assets of the estate.  Prepared extensive report which included a recommendation to appoint a trustee. |
| Equine Rescue and Sanctuary | **Examiner** <br> Appointed by the United States Trustee to serve as Examiner in connection with a non-profit public benefit corporation.  Investigated inadequate management and maintenance of financial records as well as potential alter ego.  Prepared extensive report recommending the appointment of a trustee. |
| Real Estate Investor/Developer | **Examiner** <br> Appointed by the United States Trustee to serve as Examiner to investigate the debtor's complex holdings in several affiliated companies which primarily invested in a real estate development in san Diego.  Also, performed an extensive investigation related to community vs. separate property issues. |
| Wholesale Distributor of Computers And related accessories | **Representative to Disbursing Agent** <br> Responsible for distributions in accordance with plan of reorganization, prosecution of avoidance actions and orderly liquidation of estate. |
| Manufacturer of Storage Products for CD-R, CD-RW and DVD's | **Disbursing Agent** <br> Prosecution of avoidance actions and liquidation of estate. |
| Manufacturer of Fiber-Optic Lighting Systems | **Disbursing Agent** <br> Prosecution of avoidance actions and liquidation of estate. |
| Municipality | **Accountant for Lessor** <br> Evaluated multi-million dollar claim and provided litigation support to substantiate the amount of filed claim. Performed forensic accounting of insider transaction leading to settlement with estate |
| Apparel retailer | **Accountant to Creditors' Committee** <br> Assist counsel for creditors' committee with attaining accurate financial condition as of date of filing and preparation of ordinary course study to assist counsel with preference litigation. |

| Type of Client | Employment Capacity and Services Rendered |
| --- | --- |
| Retail franchisor | **Accountant to Creditors' Committee**<br>Assist counsel for creditors' committee with and franchisee business valuation and successful sale of business assets substantially in excess of debtor-in-possession's initial offer. |
| Professional Employer Organization | **Examiner**<br>Appointed by the United States Trustee to serve as Examiner in connection with three consolidated Chapter 11 cases. Analyzed sources and uses of cash, operations and unpaid tax obligations.  Report filed recommending the appointment of a Trustee. |
| Apparel manufacturer | **Accountant to Creditors' Committee and subsequent Liquidating Trustee**<br>Assisted counsel for creditors' committee with attaining accurate financial condition as of the date of filing, plan of reorganization and disclosure statement and analysis of potential litigation against regional accounting firm. Served as accountant for liquidating agent after confirmation of plan and subsequently appointed successor liquidating agent. |
| Fish cannery | **Accountant for Liquidating Trustee**<br>Assist liquidating trustee and his counsel with reconstruction and analysis of claims, fraudulent conveyance analysis and mediation. |
| Staff Leasing/Payroll Services for the Global Entertainment Industry | **Accountant to Chapter 7 Trustee**<br>Worked closely with the Chapter 7 Trustee and his bankruptcy and special counsel (four separate law firms) Performed a forensic accounting involving 37 Debtor entities which controlled a total of 69 with revenues in excess of $1.8 billion. The Debtors served as the Employer of Record and paying agent for companies engaged in feature film, television and cable, commercials and other productions, including theater and other live venues.  Advised Trustee regarding complex tax issues. Performed accounting reconstruction of a seven-year period involving approximately 225 bank accounts and provided accounting investigation and litigation support to pursue complex litigation claims each potentially involving tens of millions of dollars which consisted of numerous avoidance actions against insiders and others; litigation with the insurance carriers for claims against the various directors and officers, errors and omissions and crime policies;  negligence and other malpractice claims against the former financial statement auditors; and, claims against the former lender.  The reconstruction involved the forensic electronic data capture and imaging of hundreds of servers and the review of more than 5,000 boxes of Debtor records. |

Exhibit "7"

Schedule of Known Class 1 Priority Claims

| Creditor | SCHEDULED CLAIM | | | FILED CLAIM | | | | | | ESTIMATED CLAIMS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Secured Amount | Priority Amount | Unsecured Amount |
| Campbell Realty Advisors, Inc. | | $3,405.07 | $12,417.73 | | | | | | | | $3,405.07 | $12,417.73 |
| Carl E. Anderson | | $9,649.82 | | | | | | | | | $9,649.82 | |
| Chris Jackson | | $13,650.00 | $150,830.98 | | | | | | | | $13,650.00 | $150,830.98 |
| Jerry N. Gillman | | $13,650.00 | $3,284.69 | | | | | | | | $13,650.00 | $3,284.69 |
| Joseph Faulkner | | $342.48 | | | | | | | | | $342.48 | |
| Kathleen Howard | | $755.36 | | | | | | | | | $755.36 | |
| Mehdi Mostaedi | | $8,964.78 | | | | | | | | | $8,964.78 | |
| The Childs Group, Inc. | | | $87,543.83 | | 7 | 5/1/20 | | $13,650.00 | $71,208.97 | | $13,650.00 | $71,208.97 |
| ZZy/ZZx, Inc. | | $13,650.00 | $83,419.96 | | | | | | | | $13,650.00 | $83,419.96 |
| TOTALS | $0.00 | $64,067.51 | $337,497.19 | | | | $0.00 | $13,650.00 | $71,208.97 | $0.00 | $77,717.51 | $321,162.33 |

Exhibit "8"

Litigation Analysis Summary

**EXHIBIT 8 TO DISCLOSURE STATEMENT**

| Case Name/Claim Name | Court (if applicable) | Description of Litigation | Current Status |
|---|---|---|---|
| Zugsmith et al. v. Scullin et al., BC581496 | LA Superior Court | Property Management and alleged rent and expense dispute. Motion pending to name the Debtor as a third party for purported liability for rent and other expenses. | Pending |
| Scullin v. Howitt et al., BC586807 | LA Superior Court | Derivative action filed by Robert Scullin against the Debtor and certain officers and directors re: alleged usurpation of corporate opportunity. | Pending |
| Scullin v. NAI Capital, Inc., BC583707 | LA Superior Court | Robert Scullin sued to compel production of certain of the Debtor's business records. | Pending |
| NAI Capital Inc. v. Tepper and Associates, BC674086 | LA Superior Court | Legal malpractice action by the Debtor against former counsel. | Pending |
| Scullin v. NAI Capital, Inc. et al., BC597601 | LA Superior Court | Robert Scullin obtained judgment for claimed wages with interest of approximately $1.8M; the Debtor timely appealed; Notice of Bankruptcy Stay filed with the Superior Court and Court of Appeal. | Appeal pending |
| 3700 Kyle Crossing, LLC v. NAI Capital Inc., CIVDS1820570 | San Bernardino Superior Court | Cross-Complaint by Seller (Client of Debtor) against the Debtor and the Debtor's broker, as Cross-Defendants, claiming breaches of fiduciary duty and fraud due to claimed non-disclosure of two non-binding letters of intent. Seller is defending action by Buyer of unimproved land for specific performance. | Pending |
| Ranjbar et al. v. MAACO et al., 19STCV45841 | LA Superior Court | Plaintiffs Tenant and Guarantors of Lease sued Landlord and the Debtor and Debtor's Broker, as Defendants, regarding alleged use restriction on leased premises. | Pending |
| Almas & Son v. NAI Capital, Inc. et al., 19VECV01611 | LA Superior Court | Landlord client of the Debtor sued the Debtor and Debtor's Broker, as Defendants, regarding tenant's claimed violation of lease use provisions. | Pending |
| Claim against D&O insurer | N/A | No action filed; potential D&O claims belonging to the estate. | No action pending. |
| Claim against employment practices/liability insurer | N/A | No action filed; potential legal malpractice claims belonging to the estate. | No action pending. |

Exhibit "9"

Merger Agreement Term Sheet

## [TO BE SUPPLIED]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document **DISCLOSURE STATEMENT DESCRIBING DEBTOR'S PLAN OF REORGANIZATION (DATED JUNE 2, 2020)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 2, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyb.com**
- **Norman M Aspis    naspis@allenmatkins.com, mdiaz@allenmatkins.com**
- **Ron Bender    rb@lnbyb.com**
- **Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **M Douglas Flahaut    flahaut.douglas@arentfox.com**
- **Elan S Levey    elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov**
- **Walter W Moore    WMoore@WaltonLawPC.com, WalterMooreInLA@gmail.com**
- **Steven G. Polard    steven.polard@ropers.com, calendar-lao@rmkb.com;melissa.tamura@rmkb.com;anthony.arriola@rmkb.com**
- **Stephen B Selbst    sselbst@herrick.com, lporetsky@herrick.com**
- **David B Shemano    dshemano@shemanolaw.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Richard P Steelman    rps@lnbyb.com, john@lnbyb.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Beth Ann R Young    bry@lnbyb.com**
- **Joshua del Castillo    jdelcastillo@allenmatkins.com**

**2.  SERVED BY UNITED STATES MAIL**: On **June 2, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Deborah J. Saltzman
United States Bankruptcy Court
255 E. Temple Street
Suite 1634 / Courtroom 1639
Los Angeles, CA  90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 2, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 2, 2020 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

NAI Capital, Inc.
File No. 9012
Plan and DS Service List
Service by U.S. Mail or NEF if
marked with an *

NAI Capital, Inc.
15821 Ventura Boulevard
Suite 320
Encino, CA 91436

Russell Clementson
United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Request for Special Notice
Bankruptcy Admin. Wells Fargo
Vendor Financial Services, LLC
c/o A Ricoh USA Program
P.O. Box 13708
Macon, GA 31208-3708

Committee Counsel
David B. Shemano **NEF***
ShemanoLaw
1801 Century Park East
Suite 1600
Los Angeles, CA  90067

U.S. Securities and Exchange
Commission Attn: Bankruptcy
Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591